**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NIVEL PARTS AND MANUFACTURING CO., LLC.<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>*Defendants*. | Court No. 26-04642<br><br>**NON-CONFIDENTIAL VERSION**<br>Confidential information Removed from pages 7 – 8 |

**COMPLAINT**

**Introduction**

1. Without affording notice or an opportunity to be heard, U.S. Customs and Border Protection ("CBP") announced fatal measures against Nivel Parts and Manufacturing Co., LLC ("Nivel" or "Plaintiff"), a U.S. low-speed personal transportation vehicle ("LSPTV") company. The imposition of "interim" measures under the Enforce and Protect Act ("EAPA"), pending a formal EAPA determination, will require Nivel to pay an astronomical cash deposit of 519.23%—which it cannot possibly afford—to satisfy retroactive and prospective tariffs levied on a range of its imports. This will drive Nivel into bankruptcy before it has an opportunity to contest CBP's unsupported determination. In practice, these measures are anything but "interim." Rather, they constitute a death sentence imposed before Nivel has had a meaningful opportunity to be heard.

2. CBP's imposition of such draconian, bankruptcy-inducing "interim" measures runs afoul of the traditional principles of due process, which demand at least notice and an opportunity to be heard. By conflating an investigation of a company's imports with a terminal penalty bankrupting that company, CBP has blown past that basic constitutional guarantee.

3. Not only do the interim measures plainly violate due process, but they are inconsistent with 19 U.S.C. § 1517(e), which requires "reasonable suspicion" of evasion before interim measures may be imposed. Here, CBP's findings were based on a cursory review and in disregard of information it had available. And, as Nivel intends to demonstrate if it is afforded an opportunity to survive and respond to the allegations, they are simply wrong.

4. Nivel will suffer irreparable harm if the unconstitutionally imposed interim measures are not immediately enjoined. Nivel faces imminent bankruptcy, alongside the erasure of decades of goodwill, customer relationships, and hard-earned market share. The "interim" measures will deprive Nivel of the ability to challenge any final determination by CBP. *See Queen's Flowers de Colombia v. United States*, 947 F. Supp. 503, 507 (Ct. Int'l Trade 1996) (finding irreparable harm where imposition of cash deposit rate would "force each of the eight {importers} out of business within an extremely short time period, eliminating their opportunity for future corrective judicial relief").

5. Without immediate judicial review, CBP could impose unlawful interim measures that deliver crippling financial consequences, while insulating its preliminary EAPA determinations and the measures themselves from judicial scrutiny. This would lead to unchecked Executive authority to punish and even eliminate private actors without allowing them any opportunity to contest the charges.

6. Because CBP's interim measures violate due process and § 1517(e), Nivel respectfully requests that this Court grant Nivel declaratory and injunctive relief blocking the imposition of the ruinous interim measures.

**<u>Jurisdiction</u>**

7. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i)(1)(D).

8. Section 1581(i)(1)(D) provides this Court "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for … administration and enforcement with respect to the matters referred to in … subsections (a)–(h) of this section."

9. This action challenges CBP's imposition of interim measures under Section 517(e) of the Tariff Act of 1930, 19 U.S.C. § 1517(e), which is a matter expressly encompassed by 28 U.S.C. § 1581(c).

10. Although jurisdiction under Section 1581(i) "may not be invoked when jurisdiction under another subsection of {Section} 1581 is or could have been available," the Federal Circuit has held that jurisdiction under § 1581(i) is proper if "the remedy provided under" other § 1581 subsections "would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018).

11. Here, the remedy provided under 28 U.S.C. § 1581(c) would be manifestly inadequate because the interim measures threaten Nivel with substantial economic harm that cannot be later remedied through this Court's review of CBP's final EAPA determination. *See Hylsa v. United States*, 22 C.I.T. 44, 48 (1998).

12. In a nearly identical matter involving a due-process challenge to interim measures imposed on another importer of LSPTVs, this Court found jurisdiction proper under § 1581(i). No importer should be "driven to extinction while waiting for judicial review of a final determination when the interim measures—not the final determination—have caused its injury." *ICON EV LLC v. United States*, 836 F. Supp. 3d 1361, 1369 (Ct. Int'l Trade 2026). If the interim measures are enforced, Nivel will not be able to challenge any final EAPA determination under § 1581(c). It would be bankrupt before it could do so.

13. Judicial review of unlawful actions taken by CBP during EAPA investigations is not confined to 28 U.S.C. § 1581(c). 19 U.S.C. § 1517(g)(3) ("Nothing in this subsection shall affect the availability of judicial review to an interested party under any other provision of law.").

14. CBP's decision to impose "interim" measures, without notice or an opportunity to be heard, constitutes reviewable final agency action within the meaning of 5 U.S.C. § 704. *See* 28 U.S.C. § 2640(e); *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

## **The Parties**

15. Plaintiff Nivel is a U.S. company headquartered in Jacksonville, Florida. Nivel, a U.S.-based importer of record and ultimate consignee of the imported merchandise, is a distributor of golf carts and aftermarket golf cart parts, with a network of thousands of golf cart dealers spread across the nation.

16. Defendant CBP is a federal agency headquartered in the District of Columbia with its principal office located at 1300 Pennsylvania Avenue, N.W., Washington, D.C. CBP is an agency within the Department of Homeland Security. CBP enforces EAPA, including the imposition of interim measures.

17. Defendant Eric Choy is the Executive Director of the Trade Remedy Law Enforcement Directorate ("TRLED") at CBP's Office of Trade. In that capacity, Executive Director Choy has the ultimate responsibility for the actions of TRLED, including the imposition of interim measures under EAPA. Executive Director Choy maintains an office at 1331 Pennsylvania Avenue, N.W., Washington, D.C. This suit is brought against him in his official capacity.

18. Defendant Rodney S. Scott is the Commissioner of CBP. This suit is brought against him in his official capacity.

19. Defendant United States of America would receive the cash deposits of the "interim" measures and is the statutory defendant under 28 U.S.C. § 1581(i). The Defendant United States of America is amenable to service through the Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Department of Justice. *See* USCIT Rule 4(h).

**Background**

20. Nivel was founded in 1968 as a golf cart dealership in Miami, Florida. Since then, through carefully maintained business relationships, Nivel has expanded its distribution and manufacturing operations. Today, Nivel employs 337 employees among its locations in eight states. Nivel serves thousands of dealers and distributors of golf-cart and non-golf-cart vehicles in the United States.

21. At entry, Nivel acts as the importer of record and is the sole party responsible for payment of all assessed duties. Therefore, Nivel must absorb any changes or increases in tariff rates; to remain competitive, Nivel can only pass on so many cost increases to its customers.

22. In August 2025, Commerce issued antidumping and countervailing duty orders on LSPTVs from the People's Republic of China. *Certain Low-Speed Personal Transportation*

*Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759 (Dep't of Com. Aug. 12, 2025) ("Orders").

23. The Orders cover finished LSPTVs of Chinese origin, as well as certain unfinished or unassembled LSPTVs of Chinese origin, defined by the scope as follows and as applicable here:

> An unfinished and/or unassembled LSPTV subject to these orders covers at a minimum a subassembly, also known as a "rolling chassis," which is typically comprised of, but not limited to, a frame or body with front and/or rear suspension components (such as arms, springs, axles, spindles, and shafts) installed and powertrain components (including either an electric motor or a gas-powered internal combustion engine) installed or ready for installation.
>
> When imported together with a rolling chassis subject to these orders, other LSPTV components, such as batteries, bumpers, wheel and tire assemblies, cowlings, fenders, grills, kick plates, steering column and steering wheel assemblies, dash assembly, seat assemblies, pedal assemblies, brake assemblies, canopy or roof assemblies, temporary rain enclosures, windshields, mirrors, headlights, taillights, lighting systems, or storage—whether assembled or unassembled, whether as part of a kit or not, and whether or not accompanied by additional components—constitute part of an unfinished and/or unassembled LSPTV that is subject to these orders. The inclusion of other products, components, or assemblies not described here does not remove the product from the scope…
>
> LSPTVs and subassemblies subject to these orders include those that are produced in the subject country whether assembled with other components in the subject country or in a third country. Processing or completion of finished and unfinished LSPTVs and subassemblies either in the subject country or in a third country does not remove the product from the scope…

Orders, 90 Fed. Reg. at 38,763.

24. The scope of the Orders is limited. An import must contain at least a Chinese-origin "subassembly, also known as a 'rolling chassis,' which is typically comprised of, but not limited to, a frame … with front and/or rear suspension components … installed and powertrain components … installed or ready for installation." *Id.*

25. Since Commerce issued the Orders, Nivel has worked diligently to shift its supply chain to Vietnam. Prior to the production of its first Vietnamese golf cart, Nivel visited its supplier's production site in Vietnam and confirmed that critical components would be sourced and produced in Vietnam. Nivel's imported [ ] are either of Vietnamese or Taiwanese origin, manufactured and assembled from parts sourced from Vietnam and Taiwan.

26. On June 8, 2026, CBP issued a request for information, inquiring about a particular entry of a golf cart. In response, Nivel produced extensive records about the golf cart: a bill of lading, purchase orders, a bill of materials, manufacturer invoices, and formal certificates of origin. Having moved its sourcing to Vietnam with documented proof, Nivel had no reason to believe that this request for information foreshadowed an all-encompassing inquiry into alleged "evasion" of AD/CVD duties.

27. Yet on June 18, 2026, CBP initiated an interim EAPA investigation into Nivel's practices after a coalition of domestic manufacturers submitted allegations that Nivel had evaded the Orders. The allegations range from purely speculative to patently false. For example, the allegation asserted that Nivel imported over twenty cargo boxes' worth of golf carts under Harmonized Tariff Schedule of the United States ("HTSUS") 9506.32 covering "golf balls." CBP never afforded Nivel an opportunity to rebut these allegations prior to initiating the investigation. Had Nivel been given the opportunity, it is confident that it could have shown that it did not import a single entry under HTSUS 9506.32, much less over twenty cargo boxes worth of entries.

28. During the pendency of the interim investigation, CBP issued two more requests for information on June 30, 2026 and July 1, 2026. Each of these requests only related to a few select entries, some of which had little, if any, connection to the Orders. For example, one entry only concerned a single [

] which is not contemplated by the Orders. Other entries covered single shipments of [ ], likewise outside the scope of the Orders. No request for information mentioned EAPA, the allegations, or an investigation covering all of Nivel's imported golf carts.

29. Nivel responded by addressing the entries in question. Nivel had no reason to believe that CBP had launched a full-scale, secret EAPA investigation based on unsubstantiated allegations regarding a range of Nivel imports, or that CBP was considering the imposition of interim measures affecting Nivel's core business. Its response was therefore narrowly tailored to the requests made of it. Nivel addressed [ ].

30. Nevertheless, on September 16, 2026, without any advance notification, CBP informed Nivel that, based on its one-sided review of "available information," CBP had determined that there was a "reasonable suspicion" of evasion by Nivel. CBP based its "reasonable suspicion" finding on infirm grounds; for instance, the [ ] entries that do not fall within the scope of the Orders.

31. In the same notice, CBP notified Nivel of its intent to "implement the following interim measures":

- Extend liquidation of unliquidated entries that entered before the date of initiation of the investigation (June 18, 2026);
- Suspend liquidation of unliquidated entries entered on or after the date of initiation of the investigation, June 18, 2026, and reject any entry summaries and require a re-file for those entries that are within the entry summary reject period;
- Require "live" entry for all imports of LSPTV from China and Vietnam by the Importers, requiring the Importers to submit proper documentation and all duties prior to release of the merchandise.

32. The interim measures require Nivel to pay cash deposits on imports previously entered on or after June 18, 2026, and they impose a further obligation to pay cash deposits on

future entries. If enforced, these interim measures would require Nivel to pay totals well into the tens of millions of dollars—all without having had any opportunity to refute CBP's underlying reasoning.

33. These "interim" measures pose an existential threat to Nivel. Nivel cannot absorb the crushing costs. Nivel cannot reduce its expenses or raise prices to offset the costs. Moreover, the interim measures threaten Nivel's ability to raise money, as its access to credit is itself contingent upon liquidity. In short, the threatened interim measures will require Nivel to declare bankruptcy.

34. These imminent harms are far from speculative. Because of the severe measures that CBP has taken, Nivel has already lost, and will continue to lose, customer confidence, competitive position, revenues, and future commercial opportunities—losses that cannot be recovered from CBP even if Nivel prevails on the merits. Neither would these harms be limited to Nivel. Nivel's bankruptcy would impose serious harm on its nationwide network of business partners, several of whom have explained the dire consequences they would face if Nivel went out of business.

## <u>STATEMENT OF CLAIMS</u>

### COUNT I – Violation of Due Process

### CBP Violated Nivel's Fifth Amendment Right to Due Process By Imposing Draconian Interim Measures Without Any Notice or Meaningful Opportunity to Be Heard

35. Nivel incorporates paragraphs 1 through 34 by reference.

36. The imposition of draconian, bankruptcy-inducing interim measures without a meaningful opportunity to be heard violates the Fifth Amendment's Due Process Clause.

37. The Fifth Amendment prohibits the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. V.

38. The Constitution governs Executive Branch administrative proceedings. An importer participating in a CBP administrative proceeding has a procedural due process right under the Fifth Amendment to notice and a meaningful opportunity to be heard before punitive measures are imposed. *Royal Brush Mfg. v. United States*, 75 F.4th 1250, 1257 (Fed. Cir. 2023).

39. In an EAPA investigation, importers must be given the right to be heard *before* CBP imposes interim measures—"not afterwards." *Superior Com. Sols., LLC v. United States*, 811 F. Supp. 3d 1363, 1376–77 (Ct. Int'l Trade 2025).

40. The imposition of bankruptcy-inducing interim measures before the accused is provided any opportunity to be heard cannot pass constitutional muster. *ICON*, 836 F. Supp. 3d at 1371. This Court has equated the "combination of cash deposits for AD/CVD duties with the live entry requirement" with sanctions and posited that a hypothetical plaintiff might be able to allege "specific enough harm" for a serious due process issue to be raised. *Phoenix Metal Co. v. United States*, No. 23-48, 2024 WL 2891503, at *9 (Ct. Int'l Trade June 10, 2024). Nivel is that plaintiff.

41. As a threshold matter, due process considerations are triggered when a constitutionally protected private interest is at issue. *See ICON*, 836 F. Supp. 3d at 1370 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). This Court has repeatedly held that importers have a protected interest in the proper assessment of duties on goods already imported. *Id.* Nivel inarguably has a protected interest in the proper assessment of duties on its already imported golf carts.

42. This Court finds a violation of due process when the private interest at stake is substantial, the risk of erroneous deprivation is substantial, and the Government's cost of providing additional process is low. *See ICON*, 836 F. Supp. 3d at 1370 (citing *Mathews*, 424 U.S. at 335).

43. For Nivel, the private interest at stake could not be greater. The imposition of interim measures and its 519.23% cash deposit rate will drive Nivel into bankruptcy before a determination on the merits of the EAPA investigation. A company driven into bankruptcy by the imposition of interim measures cannot challenge the lawfulness of any future determination. *Phoenix Metal*, 2024 WL 2891503, at *9. Therefore, although unlawfully imposed monetary exactions can be refunded, Nivel has no practical ability "to ameliorate the interim loss." *Mathews*, 424 U.S. at 341.

44. Interim measures from an EAPA investigation impose a high risk of erroneous deprivation, as CBP relied on an incomplete record for its finding of reasonable suspicion, providing no opportunity for Nivel to supplement its responses or otherwise explain how it did not violate the Orders. *See ICON*, 836 F. Supp. 3d at 1371 (citing *Mathews*, 424 U.S. at 335) (explaining that "{a}dditional procedural safeguards, such as giving ICON an opportunity to supplement its responses, would therefore likely have probative value" and would help prevent "premature or mistaken" findings).

45. The cost to the Government of providing process in this investigation is minimal. CBP routinely issues requests for information. Placing Nivel on notice of an allegation, providing Nivel an opportunity to respond, and reviewing Nivel's responses would not place a heavy burden on the Government, and would be nothing more than a minimal, routine administrative and fiscal task to the Government. *See id.* Moreover, the cost to the Government of a delay in receiving deposits from Nivel, if they were indeed warranted, is also minimal compared to the size of the public fisc.

46. CBP failed to provide Nivel notice and a meaningful opportunity to respond before imposing interim measures, because it never made Nivel aware of the existence of the EAPA

allegation, the EAPA investigation as a whole, or the possibility or the magnitude of such interim measures.

47. By imposing interim measures without first affording Nivel notice and a meaningful opportunity to be heard, CBP unlawfully deprived Nivel of due process.

**COUNT II – Violation of Due Process**

**CBP's Application of the Reasonable Suspicion Standard Violates Nivel's Fifth Amendment Due Process Rights**

48. Nivel incorporates paragraphs 1 through 47 by reference.

49. In making its finding based on a "reasonable suspicion" of evasion, CBP imposed interim measures pursuant to 19 U.S.C. § 1517(e) that will require Nivel to immediately pay CBP tens of millions in AD/CVD cash deposits.

50. As applied here, CBP's application of the reasonable-suspicion standard violated Nivel's Fifth Amendment right to due process. The standard enabled CBP to deprive Nivel of substantial property interests through a process that created an excessively high risk of erroneous deprivation. *ICON*, 836 F. Supp. 3d at 1370–71 ("It likely has a legitimate property interest in the proper assessment of imports for which it did not receive due process before interim measures were imposed.").

51. By applying this evidentiary standard in violation of the Fifth Amendment, CBP unlawfully imposed the interim measures.

**COUNT III**

**CBP's Reasonable Suspicion Findings Are Inconsistent with 19 U.S.C. § 1517(e)**

52. Nivel incorporates paragraphs 1 through 51 by reference.

53. Although CBP must have a "reasonable suspicion" of evasion to impose interim measures under 19 U.S.C. § 1517(e), CBP's application of these measures to Nivel was unreasonable.

54. CBP's suspicion of evasion was based on a cursory review of Nivel's CF-28 responses and a disregard for information available through its own ACE portal. In fact, in its responses, Nivel demonstrated that it did not import subject merchandise—information CBP disregarded when imposing interim measures.

55. Because CBP lacked a reasonable suspicion of evasion, the interim measures violated 19 U.S.C. § 1517(e).

## PRAYER FOR RELIEF

Nivel respectfully requests that this Court:

(1) Declare that CBP unlawfully imposed the interim measures;

(2) Enjoin the interim measures;

(3) Award Nivel its costs and attorneys' fees, as appropriate; and

(4) Grant Nivel such further relief as this Court deems appropriate.

Dated: October 20, 2026

Respectfully submitted,

/s/ Eric Emerson
Eric Emerson
Henry Cao
Mert C. Arkan (admission pending) Hendricks Valenzuela
Garrett Kays
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
+1.202.429.8076
eemerson@steptoe.com

/s/ Lawrence D. Rosenberg
Lawrence D. Rosenberg
Schuyler J. Schouten (admission pending)
Nicholas J. Grandpre (admission pending)
Jones Day
51 Louisiana Avenue, N.W. Washington, D.C. 20001-2113
+1.202.879.7622
ldrosenberg@jonesday.com
*Counsel for Nivel Parts and Manufacturing Co., LLC*