**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **NIVEL PARTS AND MANUFACTURING CO., LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,**<br><br>**Defendants,**<br><br>**and**<br><br>**AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,**<br><br>**Defendant-Intervenor.** | **Before: Hon. Jane A. Restani, Timothy C. Stanceu, Leo M. Gordon Judges**<br><br>**Court No. 26-4642** |

**<u>DEFENDANT-INTERVENOR AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION'S MOTION TO DISMISS</u>**

Robert E. DeFrancesco, III
Derick G. Holt
Theodore P. Brackemyre
Rebecca J. Fiebig
Joel S. Nolette
Kahlil H. Epps

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel to Defendant-Intervenor the American Personal Transportation Vehicle Manufacturers Coalition*

Dated: November 24, 2026

# TABLE OF CONTENTS

INTRODUCTION ..... 1
BACKGROUND ..... 3
A. The Coalition. ..... 3
B. The AD/CVD Investigation and Orders. ..... 4
C. The Evasion. ..... 6
D. The Ordinary EAPA Process. ..... 8
E. Procedural History. ..... 9
STANDARD OF REVIEW ..... 10
ARGUMENT ..... 11
I. The Court Lacks Subject-Matter Jurisdiction over Nivel's Complaint. ..... 11
II. Nivel's Complaint Fails to State a Claim. ..... 16
A. Nivel's Complaint Fails to State a Due Process Claim. ..... 16
B. Nivel Fails to State a Claim That the Government Lacked Reasonable Suspicion. ..... 21
CONCLUSION ..... 22

**Court No. 26-4642**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All One God Faith, Inc. v. United States*,
129 F.4th 1350 (Fed. Cir. 2025) ....................................8

*All One God Faith, Inc. v. United States*,
589 F. Supp. 3d 1238 (Ct. Int'l Trade 2022) ....................................2

*Alvin v. Suzuki*,
227 F.3d 107 (3d Cir. 2000)....................................18

*Am. Ass'n of Exp. & Imp.-Textile & Apparel Grp. v. United States*,
751 F.2d 1239 (Fed. Cir. 1985)....................................17

*Am. Pac. Plywood, Inc. v. United States*,
No. 20-03914, 2023 WL 4288346 (Ct. Int'l Trade 2023) ....................................17, 21

*Aspects Furniture Int'l, Inc. v. United States*,
607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) ....................................9, 12, 17

*Auxin Solar, Inc. v. United States*,
798 F. Supp. 3d 1331 (Ct. Int'l Trade 2025) ....................................6

*Bethlehem Steel Corp. v. United States*,
25 C.I.T. 930, 162 F. Supp. 2d 639 (Ct. Int'l Trade 2001)....................................6

*Brown v. New York City Hous. Auth.*,
No. 05 CIV. 10332 (VM), 2006 WL 1378599 (S.D.N.Y. May 17, 2006)....................................11

*Byungmin Chae v. United States*,
736 F. Supp. 3d 1364 (Ct. Int'l Trade 2024) ....................................11

*Culley v. Marshall*,
601 U.S. 377 (2024)....................................19, 20

*Diamond Tools Tech. LLC v. United States*,
545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ....................................12

*Dusanek v. Hannon*,
677 F.2d 538 (7th Cir. 1982) ....................................18

*Ereğli Demir Ve Çelik Fabrikalari T.A.Ş.* v. *U.S. Int'l Trade Comm'n*,
723 F. Supp. 3d 1354 (Ct. Int'l Trade 2024) ....................................11

*Fed.-Mogul Corp. v. United States*,
63 F.3d 1572 (Fed.Cir.1995)....................20

*Former Emp. of Drive Sol Glob. Steering, Inc. v. U.S. Sec'y of Lab.*,
181 F. Supp. 3d 1369 (Ct. Int'l Trade 2016) ....................11

*Hylsa v. United States*,
22 C.I.T. 44 (1998) ....................15

*ICON EV LLC v. United States*,
836 F. Supp. 3d 1361 (Ct. Int'l Trade 2026) .................... *passim*

*Int'l Fresh Trade Corp. v. United States*,
26 F. Supp. 3d 1363 (Ct. Int'l Trade 2014) ....................19

*Inter-Tribal Council of Ariz., Inc. v. United States*,
956 F.3d 1328 (Fed. Cir. 2020)....................10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)....................10

*Mathews v. Eldridge*,
424 U.S. 319 (1976).................... *passim*

*Miller & Co. v. United States*,
824 F.2d 961 (Fed. Cir. 1987)....................15

*NEC Corp. v. United States*,
151 F.3d 1361 (Fed. Cir. 1998)....................18

*Norcal/Crosetti Foods, Inc. v. United States*,
963 F.2d 356 (Fed. Cir. 1992)....................11, 13

*Phoenix Metal Co. v. United States*,
No. 23-00048, 2024 WL 2891503 (Ct. Int'l Trade June 10, 2024) ....................17

*Riccomini v. United States*,
69 F.2d 480 (9th Cir. 1934) ....................20

*Rimco Inc. v. United States*,
98 F.4th 1046 (Fed. Cir. 2024) ....................14

*Royal Brush Mfg., Inc. v. United States*,
75 F.4th 1250 (Fed. Cir. 2023) ....................8

*Sahaviriya Steel Indus. Pub. Co. v. United States*,
601 F. Supp. 2d 1355 (Ct. Int'l Trade 2009) ....................15

*Sunpreme Inc. v. United States*,
892 F.3d 1186 (Fed. Cir. 2018)........................................................................ *passim*

*Syneren Techs. Corp. v. United States*,
166 F.4th 1040 (Fed. Cir. 2026) ..........................................................................9

*Tel Sanayi A.S. v. United States*,
503 F. Supp. 3d 1249 (Ct. Int'l Trade 2021) ......................................................15

*Ticaret A.S. v. United States*,
986 F. Supp. 2d 1381 (Ct. Int'l Trade 2014) ................................................12, 16

*United States v. Greenlight Organic, Inc.*,
419 F. Supp. 3d 1298 (Ct. Int'l Trade 2019) ......................................................10

*United States v. Rahimi*,
602 U.S. 680 (2024)...........................................................................................19

*United States v. Uniroyal, Inc.*,
687 F.2d 467 (C.C.P.A. 1982) .............................................................................11

*Valeo N. Am., Inc. v. United States*,
277 F. Supp. 3d 1361 (Ct. Int'l Trade 2017) ......................................................12

*Viet. Finewood Co. v. United States*,
466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) ......................................................12

*Wilkinson v. Austin*,
545 U.S. 209 (2005)...........................................................................................17

**Statutes**

19 U.S.C. § 1516a(a)(2)(B)(vi)..............................................................................13

19 U.S.C. § 1517(b)(1) ..........................................................................................8

19 U.S.C. § 1517(c)(1)(A), (e)...............................................................................21

19 U.S.C. § 1517(c)(2).....................................................................................7, 9, 17

19 U.S.C. § 1517(g)(1) .....................................................................................8, 12

19 U.S.C. § 1517(g)(3) ..........................................................................................14

28 U.S.C. § 1581...............................................................................................11, 12

28 U.S.C. § 1581(c) ..................................................................................... *passim*

28 U.S.C. § 1581(i)........................................................................................ *passim*

**Regulations**

19 C.F.R. § 165.23(b) .......... 9

**Administrative Materials**

*Certain LSPTVs from the People's Republic of China*, 90 Fed. Reg. 38,759 (Dep't Commerce Aug. 12, 2025) .......... *passim*

*Certain LSPTVs from the People's Republic of China*, 89 Fed. Reg. 96,942 (Dep't Commerce Dec. 6, 2024) .......... 5

*Certain LSPTVs from the People's Republic of China*, 90 Fed. Reg. 8,517 (Dep't Commerce Jan. 30, 2025) .......... 5

*Investigation of Claims of Evasion of AD and CVDs*, 81 Fed. Reg. 56,477 (Aug. 22, 2016) .......... 8

*LSPTVs From China*, 90 Fed. Reg. 9,345 (Int'l Trade Comm'n Feb. 11, 2025) .......... 3

*Notice of Scope Ruling Applications Filed in AD and CVD Proceedings*, 91 Fed. Reg. 10,078 (Dep't Commerce Mar. 2, 2026) .......... 6, 13

*Strengthening Customs Enforcement*, Exec. Ord. 14411, § 4(b), 91 Fed. Reg. 35,125 (Off. of the President June 3, 2026) .......... 17

**Other Authorities**

161 Cong. Rec. H9275-05 .......... 19

161 Cong. Rec. S2834-02 .......... 19

161 Cong. Rec. S4559-02 .......... 19

162 Cong. Rec. S836-02 .......... 18, 19

Defendant-Intervenor American Personal Transportation Vehicle Manufacturers Coalition (the "Coalition"), by counsel, respectfully submits this motion to dismiss the Complaint filed by Plaintiff Nivel Parts and Manufacturing Co., LLC ("Nivel" or "Plaintiff"). *See* Compl., ECF No. 5 (Oct. 20, 2026) ("Compl.").[1]

## INTRODUCTION

This action is the latest maneuver in a years-long effort by Plaintiff to delay or avoid enforcement of lawful trade remedies issued in response to a flood of unfairly priced low-speed personal transportation vehicles ("LSPTVs") it imported from China that materially injured the domestic LSPTV industry. Seeking relief for its members, the Coalition petitioned the U.S. Department of Commerce ("Commerce") and the International Trade Commission (the "Commission"). Those agencies imposed Antidumping ("AD") and Countervailing Duty ("CVD") Orders (the "Orders"), which included rare critical circumstances findings because Plaintiff and other importers seriously undermined the effectiveness of the Orders by rushing thousands of LSPTVs into the United States before the preliminary duties were imposed. And Commerce, for the first time in an investigation, imposed a certification requirement to prevent Plaintiff and other importers from evading duties by importing Chinese components for assembly into LSPTVs. But rather than comply with the Orders and pay duties, Plaintiff shifted its practices to avoid enforcement, which led the Coalition to seek recourse with U.S. Customs and Border Protection ("CBP") under the Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517.

---

[1] The Coalition acknowledges the limitations imposed on its participation in this case by the Court's Order today, November 24, 2026. *See* ECF No. 40. To preserve its rights to renewed intervention in full and to preserve its rights on appeal, and in accordance with the current case schedule, ECF No. 37, in this Motion the Coalition respectfully addresses all of Nivel's claims.

EAPA exists to "level the playing field for domestic industries," *All One God Faith, Inc. v. United States*, 589 F. Supp. 3d 1238, 1240 (Ct. Int'l Trade 2022), and it authorizes a comprehensive process through which CBP independently investigates and remedies importers' evasion. This process includes (1) an initial investigation period where importers have a chance to present their case through certified responses to CBP questionnaires, which (if the agency deems the responses unsatisfactory) may conclude with the imposition of temporary and discretionary interim measures; (2) additional opportunities for importer and other interested-party participation prior to issuance of a final decision; (3) an independent administrative review process before CBP; and (4) following exhaustion of administrative remedies, judicial review before this Court under 28 U.S.C. § 1581(c).

In this case, CBP followed the EAPA procedures and found, based chiefly on its own independent research and Plaintiff's entry documents and customs data, reasonable suspicion that Plaintiff has evaded the Orders. CBP further determined that imposition of temporary interim measures to protect U.S. revenue during the remainder of the investigation was warranted.

Plaintiff is actively involved in CBP's ongoing EAPA investigation. But rather than wait for CBP's decision and avail itself of the congressionally mandated procedures for review of EAPA cases—or pursue other avenues of relief available to it before CBP imposed the interim measures—Plaintiff asks this Court to prematurely intervene on its behalf. In so doing, Plaintiff ignores multiple contrary authorities and asks this Court to build upon *ICON EV LLC v. United States*, 836 F. Supp. 3d 1361 (Ct. Int'l Trade 2026) ("*ICON*") to, in essence, gut the effectiveness of EAPA by concluding that CBP's exercise of its regulatory discretion was unjustified here and is *per se* harmful and unconstitutional. The Court should decline this invitation and instead should dismiss this action for the following reasons.

***First***, the Court lacks subject-matter jurisdiction, which bars this case on the merits. Even the *ICON* court recognized that Congress prescribed a path for judicial review of EAPA determinations—review of a final determination under 28 U.S.C. § 1581(c). And an entire separate process and path to judicial review exists for Nivel to contend that its imports are not within the scope of the Orders. Despite these available procedures, Plaintiff asks the Court to invoke its residual jurisdiction under § 1581(i), which is only available if other remedies "would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018). They are not here.

***Second***, Plaintiff fails to state a claim. Nivel's procedural-due-process claims fail because, pursuant to EAPA, Nivel received all the process it was due under the Fifth Amendment. In any event Nivel had (and has) additional process available to it, further defeating its procedural due process claim. And Plaintiff's challenge to CBP's reasonable-suspicion determination fails because CBP had ample evidence—including Plaintiff's own data—to reasonably suspect that Plaintiff evaded the Orders.

## BACKGROUND

### A. The Coalition.

The Coalition is comprised of the two largest United States manufacturers of LSPTVs—Club Car, LLC ("Club Car") and Textron Specialized Vehicles Inc. ("Textron"). *See LSPTVs From China*, 90 Fed. Reg. 9,345, 9,346 n.1 (Int'l Trade Comm'n Feb. 11, 2025) (scheduling of the final phase of countervailing duty and antidumping duty invs.). The Coalition was the petitioner in the underlying AD/CVD investigations before Commerce and the Commission, and it is the alleger in the consolidated EAPA investigation at issue here. *See* Compl. at Ex. 9, ECF No. 6-10 at 1–3

(“Interim Measures Notice”).[2] Its members are domestic producers with a direct and substantial stake in the effective enforcement of the Orders.

**B. The AD/CVD Investigation and Orders.**

In June 2024, in an effort to obtain relief from the material negative impacts of the flood of unfairly priced LSPTVs coming from China, the Coalition filed AD/CVD petitions with Commerce and the Commission. Those petitions led to a rigorous, fifteen-month investigation that culminated in AD/CVD Orders that imposed AD rates up to 478.09% and subsidy rates up to 691.58%. *Certain LSPTVs from the People’s Republic of China*, 90 Fed. Reg. 38,759, 38,760–62 (Dep’t Commerce Aug. 12, 2025) (amended final AD deter. and AD order; amended final deter. of CVD investigation and CVD order) (the “Orders”). The Coalition expected that proceedings before Commerce and the Commission would afford its members much-needed relief. However, importers of Chinese LSPTVs, including Plaintiff here, exploited every loophole at their disposal to avoid the outcomes that the Orders should have produced—*i.e.*, shifting to fairly priced domestically produced products, or paying duties to bring the imported LSPTVs in line with their fair market value. Importers’ efforts to avoid enforcement proceeded through several phases.

***First***, immediately after the Coalition filed its petitions in June 2024, importers, including Nivel, drastically increased their imports of LSPTVs from China to land as many vehicles as possible in the U.S. before Commerce could make its preliminary determinations and impose associated duties on LSPTVs. The increased volume of imports during this time period was so significant that it led to Commerce and the Commission making a critical-circumstances finding that allowed for the imposition of retroactive duties ninety days before the CVD and AD

---

[2] The Interim Measures Notice is integral to Plaintiff’s claims. *See, e.g.*, Compl. ¶ 54 (characterizing what CBP’s “suspicion of evasion was based on”).

preliminary determinations. *See Certain LSPTVs from the People's Republic of China*, 89 Fed. Reg. 96,942 (Dep't Commerce Dec. 6, 2024) (prelim. affirm. CVD deter., prelim. affirm. deter. of critical circumstances, in part, and alignment of final deter. with final AD deter.).

Commerce published its preliminary AD and CVD determinations on December 6, 2024, and January 30, 2025, respectively, after which subject imports were subject to preliminary cash deposits at significant rates. *Id.*; *Certain LSPTVs from the People's Republic of China*, 90 Fed. Reg. 8,517 (Dep't Commerce Jan. 30, 2025) (prelim. affirm. deter. of sale at less-than-fair-value inv., prelim. affirm. deter. of critical circumstances, postponement of final deter. and extension of provisional measures). In response, importers, again including Plaintiff, shifted their approach to evading the orders and started breaking vehicles down into parts and arguing that the parts were not within the scope of the AD/CVD Orders. This very issue was the subject of a contested scope proceeding before Commerce, and the importers' core theory—that separately shipped parts fall outside the Orders—was squarely resolved against the importers. *See* Interim Measures Notice at 4. And to police precisely this kind of disassembly-and-reassembly evasion, the Orders include a certification requirement—a first of its kind measure in AD/CVD investigations to combat the unprecedented level of rampant, widespread, and coordinated evasion of preliminary duties by U.S. importers, including Plaintiff and its foreign suppliers. *See* Interim Measures Notice at 3–4.

An importer who disputes that its products come within the scope of the Orders may at any time request a scope ruling from Commerce—"the result of which may subsequently be challenged before the {U.S. Court of International Trade ("CIT")}" under 28 U.S.C. § 1581(c). *Sunpreme*, 892 F.3d at 1193 (describing this as an importer's "proper remedy" when it "dispute{s} {CBP}'s application of an antidumping or countervailing duty order"). Indeed, other LSPTV importers did

just that earlier this year. *See Notice of Scope Ruling Applications Filed in AD and CVD Proceedings*, 91 Fed. Reg. 10,078 (Dep't Commerce Mar. 2, 2026). Plaintiff did not.

Following the imposition of the certification requirement, importers shifted their tactics once again. In collaboration with the same Chinese suppliers with whom they had worked for years, importers suddenly began importing identical products but claiming that they were manufactured in Vietnam. Plaintiff began importing entries from an entity known to have a business relationship with one of Plaintiff's long-time Chinese suppliers. *See* Interim Measures Notice at 15. In connection with another investigation, CBP requested information from another importer about that entity's operations and found the answers to be unsatisfactory. *Id.* at 15–16. Accordingly, CBP suspected that that entity was serving as a transshipment hub for Chinese suppliers. *Id.* Notably, this information was not provided by the Coalition; it was secured on CBP's own initiative. *See id.*

**C. The Evasion.**

When the Orders issued, the Coalition's members expected the financial relief that the remedial trade laws are designed to provide. *See Bethlehem Steel Corp. v. United States*, 25 C.I.T. 930, 933, 162 F. Supp. 2d 639, 643 (Ct. Int'l Trade 2001) ("The antidumping and countervailing duty laws . . . are intended to remedy disparities in the value of imported and domestic merchandise created by impermissible international trade practices."); *Auxin Solar, Inc. v. United States*, 798 F. Supp. 3d 1331, 1349 (Ct. Int'l Trade 2025) (noting the "direct competitive benefit" domestic manufacturers "derive . . . from the proper administration and enforcement of the antidumping laws" (cleaned up)). They did not see it. Despite the issuance of Orders carrying duty rates in the hundreds of percent, the Coalition's members continued to lose sales and market share to low-

priced Chinese-origin LSPTVs. That anomaly—duties on paper, but no relief in fact—prompted the Coalition to investigate.

The Coalition did not rely on speculation. As part of its investigation, the Coalition reviewed (among other things) commercial trade data and official U.S. import statistics. Interim Measures Notice at 3. And the Coalition retained a market researcher to prepare an investigative report. *Id.*

On the strength of the evidence the Coalition compiled during this investigation, the Coalition submitted a request for an EAPA investigation. *See id.* at 2–3. However, CBP did not simply accept the Coalition's allegations. It conducted its own investigation, exercising its statutory authority to "collect and verify" information. 19 U.S.C. § 1517(c)(2). Among other things, CBP issued CF-28s requesting information about certain entries such as "entry documentation, bills of lading, commercial invoices, packing lists, product descriptions, manufacturer information, production records, bills of materials, raw material sourcing documentation, purchase and payment records, quality inspection records, and other information relevant to the origin of the imported merchandise" and whether the merchandise came within the scope of the Orders. *See* Interim Measures Notice at 12. CBP also analyzed its own import data about Nivel's entries. *Id.* Based on the "import-pattern shifts" evident in the available import data, "unresolved origin and sourcing issues" because of deficiencies in Nivel's CF-28 responses as well as information in those materials "show{ing} continued involvement of Chinese suppliers or Chinese-origin inputs in transactions claimed to involve Vietnamese-origin merchandise," and a history of Nivel's failure to comply with the Orders, CBP found reasonable suspicion that Nivel was engaged in evasion by failing to declare covered merchandise and/or by transshipping such merchandise through Vietnam. *Id.* at 12–13.

### D. The Ordinary EAPA Process.

Congress enacted EAPA because of concern over evasion of antidumping and countervailing duties and created a statutory process for determining whether covered merchandise entered the United States through evasion. *See Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1255 (Fed. Cir. 2023); *All One God Faith, Inc. v. United States*, 129 F.4th 1350, 1353 (Fed. Cir. 2025). Congress also authorized interim measures to ensure that duties can be collected on entries made during an EAPA investigation. *See* CBP, *Investigation of Claims of Evasion of AD and CVDs*, 81 Fed. Reg. 56,477, 56,478 (Aug. 22, 2016) (explaining that interim measures are used "to ensure that appropriate duties can be collected on entries of covered merchandise made during the pendency of an EAPA investigation").

EAPA establishes a carefully sequenced administrative process. An interested party—including a domestic manufacturer or trade association—may submit an allegation that merchandise covered by an AD/CVD order has entered the United States through evasion. 19 U.S.C. § 1517(b)(1). If the allegation reasonably suggests evasion, CBP must initiate an investigation within fifteen business days of accepting the petition. *Id.* Within ninety calendar days of initiation, CBP must decide whether "there is a reasonable suspicion" of evasion and, if so, must impose interim measures. *Id.* § 1517(e). No later than 300 calendar days after initiation, CBP must make an initial determination, based on substantial evidence, whether evasion occurred. *Id.* § 1517(c)(1)(A). A dissatisfied party may then seek *de novo* administrative review, which CBP must complete within sixty business days, *id.* § 1517(f), after which the party may seek judicial review in this Court under 28 U.S.C. § 1581(c), *id.* § 1517(g)(1).

Two features of the initial investigation warrant emphasis. ***First***, the initial investigation—before interim measures—is genuinely investigative, and CBP is not a passive recipient of an

alleger's say-so. EAPA grants CBP broad authority to "collect and verify" any information it deems necessary to make its evasion determination. 19 U.S.C. § 1517(c)(2). CBP routinely exercises that authority by issuing information-request forms—CF-28s and CF-29s—to substantiate an alleger's allegations and to obtain the importer's own account of its practices. Through these requests, CBP affords importers an opportunity to furnish exculpatory information about their imports, and CBP evaluates the responses it receives. CBP is not limited to what allegers say, nor is it required to take an alleger's allegations as true. It has full authority to conduct an independent review of the evidence and to reach its own conclusions.

***Second***, CBP retains discretion to revisit its interim-measures decision. Interim measures are, by design, temporary and non-final. Once they are imposed, "parties under investigation have mechanisms through which to respond to the allegations of evasion" and "to contest . . . the imposition of interim measures," *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1273 (Ct. Int'l Trade 2022), including by submitting additional factual information, 19 C.F.R. § 165.23(b), and written argument, *id.* § 165.26(a). And "administrative agencies possess inherent authority to reconsider their decisions," *Syneren Techs. Corp. v. United States*, 166 F.4th 1040, 1044 (Fed. Cir. 2026) (internal citations omitted), such that CBP may reconsider its decision to impose the interim measures as the investigation proceeds.

## E. Procedural History.

CBP followed the EAPA process here. After it accepted the Coalition's petition, CBP initiated a consolidated investigation on June 18, 2026. *See* Interim Measures Notice at 10–11. In the course of that investigation, CBP did exactly what the statute contemplates: it conducted independent research into the issues alleged and relied on information provided by importers to

substantiate its findings. *Id.* at 12–13. CBP then notified Plaintiff of its decision to impose interim measures and detailed its findings. *See id.* at 1; Mot. at Ex. 8, ECF No. 6-9 at 2.

About one month later, Nivel filed this lawsuit. *See generally* Compl. In its Complaint, Nivel asserts that CBP wrongly found evasion and imposed interim measures because its entries are "outside the scope of the Orders." *See, e.g.*, Compl. at ¶¶ 28, 30. Nivel invokes this Court's jurisdiction under 28 U.S.C. § 1581(i), claiming that "'the remedy provided under' other § 1581 subsections 'would be manifestly inadequate.'" *See* Compl. at ¶¶ 7–14 (quoting *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018)). And Nivel alleges that CBP's interim measures violate Nivel's procedural due process rights under the Fifth Amendment, *see id.* at ¶¶ 35–51, and are unsupported by reasonable suspicion of evasion, *id.* at ¶¶ 52–55. Throughout its Complaint, Nivel relies heavily on *ICON*, 836 F. Supp. 3d 1361, another action arising from a similar EAPA investigation that was decided earlier this year. *See* Compl. at ¶¶ 12, 40–42, 44, 50. For the reasons set forth below, the Coalition respectfully submits that *ICON* was wrongly decided both as to jurisdiction and as to due process.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction," and it "is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the proponent of federal-court jurisdiction "bears the burden of establishing subject-matter jurisdiction." *Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1337 (Fed. Cir. 2020) (internal citation omitted).

A complaint must be dismissed for failure to state a claim, *see* USCIT Rule 12(b)(6), where the plaintiff fails to allege "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *United States v. Greenlight Organic, Inc.*, 419 F. Supp. 3d 1298, 1302–03 (Ct. Int'l

Trade 2019) (cleaned up). The Court is "not required to accept as true legal conclusions or threadbare recitals of the elements of a cause of action." *Id.* at 1303 (cleaned up). In assessing a complaint under Rule 12(b)(6), the Court may consider the complaint's allegations together with "matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record." *Byungmin Chae v. United States*, 736 F. Supp. 3d 1364, 1368 (Ct. Int'l Trade 2024) (cleaned up). And the complaint's factual allegations are not to be accepted as true when they contradict such materials. *See, e.g.*, *Brown v. New York City Hous. Auth.*, No. 05 CIV. 10332 (VM), 2006 WL 1378599, at *1 (S.D.N.Y. May 17, 2006).

## ARGUMENT

### I. The Court Lacks Subject-Matter Jurisdiction over Nivel's Complaint.

Like all federal courts, the CIT is a court of limited jurisdiction, the bounds of which are governed by 28 U.S.C. § 1581. *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 358 (Fed. Cir. 1992); *see also Former Emp. of Drive Sol Glob. Steering, Inc. v. U.S. Sec'y of Lab.*, 181 F. Supp. 3d 1369, 1374, 1378 (Ct. Int'l Trade 2016) (Section 1581 sets forth the "jurisdictional limits" of the CIT and "must be strictly construed").

Section 1581 sets forth eight heads of jurisdiction, § 1581(a)–(h), after which it sets forth a catch-all, § 1581(i). Section 1581(i) "is the Court's 'residual' jurisdictional provision." *Ereğli Demir Ve Çelik Fabrikalari T.A.Ş.* v. *U.S. Int'l Trade Comm'n*, 723 F. Supp. 3d 1354, 1364 (Ct. Int'l Trade 2024). Residual jurisdiction is "strictly limited." *Norcal/Crosetti Foods*, 963 F.2d at 359. Jurisdiction under § 1581(i) is generally unavailable "when jurisdiction under another subsection of § 1581 *is or could have been available*." *Id.* In other words, when another jurisdictional provision *would be available* following the completion of the administrative process, § 1581(i) jurisdiction does not exist, even if that administrative process is not complete at the time

suit is filed. *See, e.g.*, *United States v. Uniroyal, Inc.*, 687 F.2d 467, 472 (C.C.P.A. 1982) (emphasizing that § 1581(i) is not to "be used generally to bypass administrative review by meaningful protest"); *accord Sunpreme*, 892 F.3d at 1191; *see also Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 986 F. Supp. 2d 1381, 1384 (Ct. Int'l Trade 2014) ("That judicial review may be delayed by requiring a party to wait for Commerce's final determination in a {CVD} investigation is not enough" to trigger § 1581(i) jurisdiction). That is, when "the ***type*** of review sought by a plaintiff asserting the court's § 1581(i) jurisdiction" is "already . . . provided for" by another provision of § 1581—even if review under another provision of § 1581 is not yet available—residual jurisdiction generally does not exist. *Borusan*, 986 F. Supp. 2d at 1385 (emphasis added). The party claiming otherwise "has the burden to show that the remedy" provided for under another provision of § 1581 "would be manifestly inadequate." *Sunpreme*, 892 F.3d at 1191.

Here, another jurisdictional provision of § 1581 provides for the type of judicial review sought by Nivel in this case. Under § 1581(c), the CIT has "exclusive jurisdiction of any civil action commenced under section . . . 517 of the Tariff Act of 1930." Section 517, in turn, authorizes aggrieved parties following completion of EAPA review proceedings to seek judicial review in this Court of CBP's EAPA determination. 19 U.S.C. § 1517(g)(1). And this review includes challenges to CBP's interlocutory imposition of interim measures under EAPA. *See, e.g.*, *Aspects Furniture*, 607 F. Supp. 3d at 1253–54, 1269–70, 1273; *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1339–41 (Ct. Int'l Trade 2021); V*iet. Finewood Co. v. United States*, 466 F. Supp. 3d 1273, 1284 (Ct. Int'l Trade 2020). Thus, Plaintiff's "remedy is to continue participating in the administrative proceedings . . . until they are concluded with the final

determination{,} at which point" Plaintiff may pursue relief in accordance with § 1517 and § 1581(c). *Valeo N. Am., Inc. v. United States*, 277 F. Supp. 3d 1361, 1366 (Ct. Int'l Trade 2017).

Section 1581(c) jurisdiction also "could have been available" to Plaintiff through appealing Commerce's final determination regarding the scope (or seeking a new scope ruling). *Norcal/Crosetti Foods*, 963 F.2d at 359 (emphasis omitted). Plaintiff was an active participant in the proceedings regarding the scope of the Orders, but Plaintiff's scope arguments were unsuccessful. *See* Interim Measures Notice at 4. And Plaintiff's theory here is that "the scope of the Orders is limited" and does not cover its merchandise. Compl. ¶¶ 23–25, 28–30. But an "established administrative procedure for determining the scope of an {AD} or {CVD} order" exists—obtaining a scope ruling before Commerce and, if unfavorable, appealing that ruling to this Court. *Sunpreme*, 892 F.3d at 1192–93; *see* 19 U.S.C. § 1516a(a)(2)(B)(vi); 28 U.S.C. § 1581(c). That is an importer's "proper remedy" when it "dispute{s} {CBP's} application of an {AD} or {CVD} order." *Sunpreme*, 892 F.3d at 1192–93; *see also Notice of Scope Ruling Applications Filed in AD and CVD Proceedings*, 91 Fed. Reg. at 10,078 (noting that several other LSPTV importers sought a scope ruling).

Recent developments in related EAPA proceedings underscore the point. On November 16, CBP sent a covered merchandise referral to Commerce in the EAPA proceedings involving ICON and several other importers. *See* Ex. 1, Letter from Lee M. Baxley, Acting Dir., TRLED, to Kasey O'Connor, Performing the non-exclusive functions and duties of the Assistant Sec'y for Enf't and Compliance, Int'l Trade Admin., re: *Covered Merchandise Referral Request for EAPA Investigation 8247 Involving the Antidumping and Countervailing Duty Orders on Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China* (Nov. 16, 2026) at 3. And the referral specifically asks Commerce to resolve whether LSPTV parts or subassemblies

produced in China and assembled into LSPTVs in a third country are within the scope of the Orders. *Id.* at 3–4. In other words, where scope is at issue, scope proceedings are available. And litigants cannot "circumvent{}" that available process simply by declining to pursue it. *See Sunpreme*, 892 F.3d at 1193 ("Permitting such circumventions would discourage importers from seeking scope rulings and undermine the remedial scheme established by Congress.").

Because § 1581(c) would be available to Plaintiff after the EAPA proceeding—and because the scope-ruling process supplied an additional avenue for § 1581(c) review—§ 1581(i) review is available only if Plaintiff shows that § 1581(c) is "manifestly inadequate." *Rimco Inc. v. United States*, 98 F.4th 1046, 1052 (Fed. Cir. 2024).[3] This exception is exceedingly narrow. *See* Jeanne E. Davidson & Zachary D. Hale, *Developments During 2006 Concerning 28 U.S.C. § 1581(i)*, 39 Geo. J. Int'l L. 127, 134 (2007) (discussing decisions exemplifying the "narrowness of the 'manifest inadequacy' exception"). To allege that it qualifies for this exception, Plaintiff points to *ICON*, Compl. ¶ 12, which concluded that § 1581(c) was manifestly inadequate where the plaintiff faced "a real possibility of bankruptcy within the month" without judicial intervention, *ICON*, 836 F. Supp. 3d at 1369. But respectfully, *ICON* was wrongly decided.

For one, *ICON*'s holding cannot be reconciled with binding precedent. For instance, in *International Custom Products, Inc. v. United States*, the Federal Circuit held that review under § 1581(a) was not manifestly inadequate even though the plaintiff alleged "many forms of financial hardship" that would flow from awaiting review following the completion of administrative proceedings, "including an imminent threat of bankruptcy" that would render "any available relief"

[3] That EAPA contains a "{r}ule of construction" specifying that its judicial-review provisions do not "affect the availability of judicial review to an interested party under any other provision of law," 19 U.S.C. § 1517(g)(3), does not alter this requirement. A savings clause like this "preserves" existing "rights" and "remedies," 1A Sutherland Statutory Construction § 20:13 (8th ed. Updated Nov. 2025); it does not expand them.

under § 1581(a) futile to the plaintiff "due to its financial distress." 467 F.3d 1324, 1327 (Fed. Cir. 2006). Likewise, in *American Air Parcel Forwarding Co. v. United States*, the Federal Circuit rejected an attempt to invoke § 1581(i) for a due-process claim where the plaintiff asserted that § 1581(a) was inadequate in light of the "financial distress" it faced absent immediate judicial review. 718 F.2d 1546, 1550–51 (Fed. Cir. 1983); *accord Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987). Simply, "{f}inancial hardship resulting from review under § 1581(a)–(h) does not constitute manifest inadequacy." *Celik Halat ve Tel Sanayi A.S. v. United States*, 503 F. Supp. 3d 1249, 1254 (Ct. Int'l Trade 2021).

*ICON* attempted to distinguish *International Custom Products* and *American Air Parcel Forwarding* on the ground that the importers in those cases had failed to pursue alternative relief before invoking residual jurisdiction. But setting aside that this explanation draws a distinction without a difference to these cases' holdings that a plaintiff's "financial distress" even in the form of "imminent bankruptcy" does not trigger the manifest-inadequacy exception, this distinction is also inapt here. Plaintiff could have sought review of Commerce's scope decision or pursued further clarity from Commerce via the scope process, but it did not do so, instead waiting until its financial position allegedly became dire to bring its challenge. Thus, even assuming any legitimate claim of financial hardship, Plaintiff has placed itself "in a precarious position with knowledge of th{e} risk." *Am. Air Parcel Forwarding Co.*, 718 F.2d at 1551. This "plight cannot be attributed to deficiencies" inherent in § 1581(c) that might trigger jurisdiction under § 1581(i). *See id.* Allowing Plaintiff to proceed under § 1581(i) "would undermine the integrity of the clear path Congress intended {it} to follow" and the "remedial scheme" that Plaintiff chose not to pursue. *Sunpreme*, 892 F.3d at 1193.

Plaintiff also cites *Hylsa v. United States*, 22 C.I.T. 44, 48 (1998), Compl. ¶ 11, but *Hylsa* also is inapposite. *Hylsa* involved an effort to stop an allegedly unlawful proceeding from occurring at all. *See Sahaviriya Steel Indus. Pub. Co. v. United States*, 601 F. Supp. 2d 1355, 1361–62 (Ct. Int'l Trade 2009); *see also Borusan*, 986 F. Supp. 2d at 1387 n.7, 1389. Plaintiff does not dispute CBP's statutory authority to conduct an EAPA investigation; it challenges CBP's interlocutory conclusions in that investigation. A contention that a "proceeding {Plaintiff has} already endured was defective" does not make § 1581(c) manifestly inadequate. *Borusan*, 986 F. Supp. 2d at 1389.

Thus, § 1581(c) is not manifestly inadequate. Plaintiff's decision to seek immediate review of interim measures under § 1581(i), rather than complete the EAPA process or pursue other available recourse, cannot expand this Court's residual jurisdiction. *See Sunpreme*, 892 F.3d at 1193. The Court therefore lacks subject-matter jurisdiction and should dismiss this action.

## II. Nivel's Complaint Fails to State a Claim.

Even if the Court (wrongly) concludes that it has jurisdiction, the Court still must dismiss because the Complaint fails to state a claim as a matter of law. Nivel obtained the process it was due. And the materials cognizable at this stage demonstrate that CBP had ample reasonable suspicion of Nivel's evasion.

### *A. Nivel's Complaint Fails to State a Due Process Claim.*

Under the *Mathews* framework, Plaintiff's due-process claims turns on considering (1) the private interest affected by the Government's action, (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value (if any) of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would

entail. *Wilkinson v. Austin*, 545 U.S. 209, 224–25 (2005); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Even assuming a viable interest here,[4] Plaintiff's due-process claims fail otherwise.

The second *Mathews* factor considers "the risk of an erroneous deprivation . . . through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. The risk of erroneous deprivation under EAPA is low. CBP does not simply rubber-stamp an alleger's allegations; CBP can and does conduct independent investigations during EAPA proceedings, exercising statutory and regulatory authority to collect and verify information. 19 U.S.C. § 1517(c)(2). Allegers such as the Coalition play a role—but only a role. Here, CBP conducted independent research and reviewed relevant records, including CF-28 responses provided by Nivel relating to its imports.[5]

---

[4] In its Complaint, Plaintiff rightly limits its due-process claim to the goods it has already imported, Compl. ¶ 41, because it has no "right 'to engage in international trade,'" *Phoenix Metal Co. v. United States*, No. 23-00048, 2024 WL 2891503, at *9 n.49 (Ct. Int'l Trade June 10, 2024) (quoting *Am. Ass'n of Exp. & Imp.-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985)), and "no legitimate property interest in future imports" under the Due Process Clause, *ICON*, 836 F. Supp. 3d at 1370 n.16; *see also Aspects Furniture*, 607 F. Supp. 3d at 1271 ("{I}mporters do not have a protected interest in the future importation of goods at a particular rate."); *accord Am. Pac. Plywood, Inc. v. United States*, No. 20-03914, 2023 WL 4288346, at *7 (Ct. Int'l Trade June 22, 2023).

[5] Nivel's assertions that the CF-28s it received in June and July 2026 gave it no "reason to believe" that CBP was conducting an EAPA investigation, Compl. ¶ 29, rings hollow. *See, e.g.*, *Phoenix Metal*, 2024 WL 2891503, at *8 ("Frequently . . . {CBP} issues a CF-28 prior to notice of investigation and imposition of interim measures."). That is especially so here, given Nivel's involvement in the underlying AD/CVD proceedings. *See, e.g.*, *ICON*, 836 F. Supp. 3d at 1371 (noting, in an opinion issued more than one month before Nivel received the first of the CF-28s, and in a case involving another LSPTV importer involved in those proceedings, how CBP referenced "extensively" the importer's CF-28 responses "in imposing interim measures"); *see also, e.g.*, *Strengthening Customs Enforcement*, Exec. Ord. 14411, § 4(b), 91 Fed. Reg. 35,125, 35,127 (Off. of the President June 3, 2026) (ordering customs to prioritize "the enforcement of Federal law relating to . . . importations involving misclassification, undervaluation, and illegal transshipment, including investigations conducted pursuant to" EAPA); *CBP Has Increased Scrutiny: What CF-28s and CF-29s Mean*, W. Overseas Corp. (June 19, 2026), https://www.westernoverseas.com/cbp-increased-scrutiny-cf28-cf29-importers/ ("A CF-28 should not be treated as routine paperwork . . . A CF-28 response that raises more questions than

Further, additional or substitute procedural safeguards ***are already available*** to importers. As discussed above, Plaintiff could have sought judicial review of the scope-ruling proceeding it participated in, or it could have sought further clarity through the scope-ruling process, which is not only an alternative process but also the "proper remedy" for an importer "disput{ing} {CBP's} application of an {AD} or {CVD} order." *Sunpreme*, 892 F.3d at 1193. The government "cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982); *see also, e.g.*, *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (collecting authorities confirming that "to state a claim for failure to provide due process," the plaintiff generally "must have taken advantage of the processes that are available to him or her"); *cf. NEC Corp. v. United States*, 151 F.3d 1361, 1367, 1376 (Fed. Cir. 1998) (rejecting a procedural-due-process challenge in which the plaintiff "chose to withhold whatever facts it might have favorable to its cause" in the administrative process).

The third *Mathews* factor—the Government's interest, including the fiscal and administrative burdens that additional procedures would entail—strongly favors denial. Requiring pre-interim-measures notice and an opportunity to be heard would impair the public interest. Evasion of AD and CVD Orders is common, with importers constantly modifying their tactics to avoid detection. *See, e.g.*, 162 Cong. Rec. S836-02, S837 (Sen. Wyden), 2016 WL 544351 (discussing the "inventiveness" of evaders to "skirt the laws" using "shell games, sophisticated schemes, and fraudulent records to evade duties"). Investigating and remedying evasion is like a game of whack-a-mole, and giving importers advance notice will only result in importers changing

---

it answers can escalate quickly—from an information request to a formal notice of action."). But regardless, for the reasons explained in this section, Plaintiff's claim fails.

their evasion tactics to nullify investigations and escape detection. *See, e.g.*, *id.* (discussing evaders' "common" practice of "merchandise laundering," whereby when "a company gets busted for violating the trade laws," they just "go to another country and slap a label on it and are able to skirt the laws" that way); 161 Cong. Rec. S2834-02, S2844 (Sen. Portman), 2015 WL 2235999 (discussing similar "example{s}" of "hard to keep up with" evasion tactics).

The process created by EAPA exists to equip the federal government with the mechanisms to "properly investigate" and combat this problem. 161 Cong. Rec. H9275-05, H9276 (Rep. Cole), 2015 WL 8493823.[6] The public "has a strong interest in protecting the revenue of the United States and in assuring compliance with the trade laws." *Int'l Fresh Trade Corp. v. United States*, 26 F. Supp. 3d 1363, 1371 (Ct. Int'l Trade 2014). And every day that an evading importer continues to import without paying duties is a day that U.S. companies and their employees are harmed.

Especially considering the "function involved," *Mathews*, 424 U.S. at 335, "{h}istorical practice reinforces" the strength of the governmental interest in the existing EAPA process, *see Culley v. Marshall*, 601 U.S. 377, 390 (2024); *see also United States v. Rahimi*, 602 U.S. 680, 717 (2024) (Kavanaugh, J., concurring) ("For more than 200 years, this Court has relied on history when construing vague constitutional text in all manner of constitutional disputes."). "Since the

---

[6] *See also, e.g.*, 161 Cong. Rec. S4559-02, S4572 (Sen. Wyden), 2015 WL 3886565 (explaining the goal of EAPA to ensure the government could "stay out in front" of the "complicated schemes and shadowy tactics" used to "break the trade rules"); 161 Cong. Rec. S2834-02, S2844 (Sen. Portman), 2015 WL 2235999 (EAPA "goes after" sophisticated evasion schemes); 161 Cong. Rec. H9275-05, H9276 (Rep. Cole), 2015 WL 8493823 (explaining how the investigation process created by EAPA gives CBP the "tools" to more "effectively act against . . . evasion"); *id.* at H9294 (Rep. Barletta) (explaining that EAPA gave CBP the "tools" to "prevent foreign trade cheaters from sneaking their goods onto our shelves without paying the appropriate duties"); White House, Office of the Press Secretary, *Signing Statement for H.R.* 644 (Feb. 24, 2016) (Pres. Obama), 2016 WL 737735 (highlighting that EAPA would "allow CBP to act more quickly to prevent importers from evading AD/CVD orders" and "more effectively counter attempts at duty evasion").

Founding era, statutes have authorized the Government to seize" outright personal property "involved in suspected violations of the customs laws," giving the property owner adequate due process through the subsequent opportunity to challenge the seizure at a later "'trial.'" *Culley*, 601 U.S. at 390. These statutes generally "did not allow property owners to challenge the validity of the seizure through a separate preliminary hearing or any similar procedure." *Id.* at 391. And short of prevailing at the "trial" over the validity of the seizure, property owners generally could recover their property only by "executing a 'bond' for an appraised amount." *Id.*

EAPA tracks this historical practice, allowing for the up-front imposition of interim measures based on suspected evasion of customs duties and affording the importer an opportunity to rebut the evasion allegation through an expedited review process following those actions. Given this "historical practice," the government's interest here is compelling. *See id.* at 392; *see also, e.g.*, *Riccomini v. United States*, 69 F.2d 480, 483 (9th Cir. 1934) ("Congress has plenary power to prescribe specifically the methods by which the rights of importers against the Government may be enforced." (internal citations omitted)).

Notably, the *ICON* court's analysis of this factor was cursory and did not grapple with the systemic consequences of imposing a pre-deprivation-notice requirement on EAPA investigations—the whack-a-mole problem, the incentive to obscure evidence, or the injury to a domestic industry that has no monetary remedy for evasion-driven harm. *See ICON*, 836 F. Supp. 3d at 1371. To the extent *ICON* can be read to have discounted the Government's (and the domestic industry's) interest, it did so without meaningful consideration, and this Court should not follow suit. *See, e.g.*, *Fed.-Mogul Corp. v. United States*, 63 F.3d 1572, 1581 (Fed.Cir.1995) ("Trade policy is an increasingly important aspect of foreign policy, an area in which the executive branch

is traditionally accorded considerable deference.”). Properly weighed, the third *Mathews* factor decisively favors upholding EAPA.

***B. Nivel Fails to State a Claim That the Government Lacked Reasonable Suspicion.***

Reasonable suspicion is a modest, preliminary standard. *See, e.g.*, *Am. Pac. Plywood, Inc. v. United States*, No. 20-03914, 2023 WL 4288346, at *9 (Ct. Int’l Trade June 22, 2023) (this standard does not “impos{e} a difficult burden on the agency” and precludes *post hoc* “flyspeck{ing}”). And Congress deliberately enshrined this standard in EAPA to permit “speedy enforcement” of AD/CVD orders being evaded, on a temporary basis, while the investigation proceeds. Michael E. Roll & Ashley Akers, *The Enforce and Protect Act: A Primer on the Administrative CBP Process and Summary of Judicial Decisions*, 56 Vand. J. Transnat’l L. 1025, 1056 (2023). It is distinct from, and less demanding than, the substantial-evidence standard that governs CBP’s ultimate evasion determination. 19 U.S.C. § 1517(c)(1)(A), (e).

CBP had ample grounds for reasonable suspicion of evasion here. *See* Interim Measures Notice. The record before CBP included the Coalition’s request for investigation and associated evidence, but CBP also relied on Nivel’s import data from its own records as well as Nivel’s CF-28 responses. *Id.* at 12–13. And on the “totality of the evidence,” including Nivel’s prior failure to declare covered merchandise, shifts in its import practices following the Orders, and “unresolved origin and sourcing issues in the CF-28 responses,” CBP found reasonable suspicion that Plaintiff was engaged in evasion. *Id.*

Nivel casts aspersions in particular at the Coalition’s allegations, but this is a red herring. Compl. ¶ 27. For example, CBP did not uncritically accept the Coalition’s allegations regarding Nivel’s HTSUS classification of covered merchandise but conducted its own investigation—one during which, it bears repeating, Nivel had the opportunity to provide purportedly exculpatory

information to CBP through its CF-28 responses. But between deficiencies in those responses, suspicious import-pattern shifts "confirmed by CBP's review of official entry data," and Nivel's own history of entering "covered merchandise as . . . standard consumption entries not subject to AD/CVD duties," CBP independently determined that Nivel's conduct created reasonable suspicion of evasion. Interim Measures Notice at 12.

CBP had ample grounds to reasonably suspect Nivel of evasion. Nivel's allegations to the contrary fail to state a claim.

## CONCLUSION

For the foregoing reasons, the Coalition respectfully requests that the Court dismiss Nivel's Complaint.

Respectfully submitted,

*/s/ Derick G. Holt*
Robert E. DeFrancesco, III
Derick G. Holt
Theodore P. Brackemyre
Rebecca J. Fiebig
Joel S. Nolette
Kahlil H. Epps

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel to Defendant-Intervenor the American Personal Transportation Vehicle Manufacturers Coalition*

Dated: November 24, 2026

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **NIVEL PARTS AND MANUFACTURING CO., LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,**<br><br>**Defendants,**<br><br>**and**<br><br>**AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,**<br><br>**Defendant-Intervenor.** | **Before: Hon. Jane A. Restani, Timothy C. Stanceu, Leo M. Gordon, Judges**<br><br>**Court No. 26-4642** |

**{PROPOSED} ORDER**

Upon consideration of the American Personal Transportation Vehicle Manufacturers Coalition's Motion to Dismiss, and other papers and proceedings herein, it is hereby

**ORDERED** that the Coalition's motion is granted; and it is further

**ORDERED** that the Complaint is dismissed.

Dated: ____________________, 2026
New York, NY

______________________________
Judge

______________________________
Judge

______________________________
Judge