UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE JANE A. RESTANI, JUDGE
HONORABLE LEO M. GORDON, JUDGE
HONORABLE TIMOTHY C. STANCEU, JUDGE

NIVEL PARTS AND MANUFACTURING CO. LLC,

Plaintiff,

v.

UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,

Defendants.

PUBLIC VERSION

No. 26-04642

**DEFENDANTS' MOTION TO DISMISS**

OF COUNSEL

TAMARI J. LAGVILAVA
Senior Attorney
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, D.C. 20229

November 24, 2026

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

MARGARET J. JANTZEN
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch

ADAM A. VISCHIO
Trial Attorney
Department of Justice, Civil Division
International Trade Field Office

*Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 3

ARGUMENT ..... 15

I. Legal Standards ..... 15

II. The Court Should Dismiss This Case for Lack of Subject-Matter Jurisdiction Because Jurisdiction Under Section 1581(c) Will Be Available And Is Not Manifestly Inadequate ..... 16

A. EAPA Expressly Provides For Judicial Review Pursuant To Subsection 1581(c) ..... 17

B. The Remedy Available Under Section 1581(c) Is Not Manifestly Inadequate ..... 19

III. Even Assuming That It Were Possible For The Court To Invoke Its Residual Jurisdiction, Plaintiff's Case Is Not Ripe For Review ..... 25

CONCLUSION ..... 27

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ..... 25, 26

*All One God Faith, Inc. v. United States*,
589 F. Supp. 3d 1238 (Ct. Int'l Trade 2022) ..... 2, 17, 19

*Am. Pac. Plywood, Inc. & LB Wood Cambodia Co., Ltd.*,
2023 WL 4288346 (Ct. Int'l Trade June 22, 2023) ..... 18

*American Air Parcel Forwarding Co. v. United States*,
718 F.2d 1546 (Fed. Cir. 1983) ..... 20, 21

*ARP Materials, Inc. v. United States*,
47 F.4th 1370 (Fed. Cir. 2022) ..... 16, 24

*Aspects Furniture Int'l, Inc. v. United States*,
607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) .......... 18

*Corus Staal BV v. United States*,
502 F.3d 1370 (Fed. Cir. 2007) .......... 15

*Chemsol, LLC v. United States,*
755 F.3d 1345 (Fed. Cir. 2014) .......... 1, 2, 17, 19

*CP Kelco (Shandong) Biological Co. v. United States*,
145 F. Supp. 3d 1366 (Ct. Int'l Trade 2016) .......... 20, 21

*Diamond Tools Technology LLC v. United States*,
|545 F. Supp 1324 (Ct. Int'l Trade 2021) .......... 17, 26

*Fisher v. United States*,
402 F.3d 1167 (Fed. Cir. 2005) .......... 25

*Fujitsu Gen. Am., Inc. v. United States*,
283 F.3d 1364 (Fed. Cir. 2002) .......... 16

*Government of People's Republic of China v. U.S.*,
483 F. Supp. 2d 1274 (Ct. Int'l Trade 2007) .......... 24

*Hartford Fire Ins. Co.v. United States*,
544 F.3d 1289 (Fed. Cir. 2008) .......... 20, 21

*Hysla v. United States*,
1998 WL 51731 (Ct. Int'l Trade Feb. 3, 1998) .......... 19

*ICON EV LLC v. United States,*
840 F.Supp. 3d 600 (Ct. Int'l Trade 2026) .......... 18, 23, 25

*ICON EV LLC. V. United States*,
836 F.Supp. 3d 1361 (Ct. Int'l Trade 2026) .......... 23

*Int'l Custom Prods., Inc v. United States*,
467 F.3d 1324 (Fed. Cir. 2006) .......... 20, 21

*Int'l Custom Prods., Inc. v. United States*,
791 F.3d 1329 (Fed. Cir. 2015) .......... 23

*Jiangsu Tiangong Tools Co. Ltd. v. United States*,
190 F. Supp. 3d 1218 (Ct. Int'l Trade 2016) .......... 21, 24

*Koyo Seiko Co. v. United States*,
715 F. Supp. 1097 (Ct. Int'l Trade 1989) ........ 24

*Leco Supply, Inc. v. United States*,
619 F. Supp. 3d 1287 (Ct. Int'l Trade 2023) ........ 19

*MacMillan Bloedel Ltd. v. United States*,
1992 WL 107336 (Ct. Int'l Trade 1992) ........ 22, 24

*Martin v. United States*,
894 F.3d 1356 (Fed. Cir. 2018) ........ 25

*McKart v. U.S.*,
395 U.S. 185 (1969) ........ 15

*Mfrs. Mut. Ins. Co. v. Sullivan,*
526 U.S. 40 (1999) ........ 23

*Nat'l Corn Growers Ass'n v. Baker*,
840 F.2d 1547 (Fed. Cir. 1988) ........ 20, 21

*Nat'l Nail Corp. v. United States*,
335 F. Supp. 3d 1321 (Ct. Int'l Trade 2018) ........ 20

*Nat'l Park Hospitality Ass'n v. U.S. Dep't of Interior*,
538 U.S. 803 (2003) ........ 26

*Ninestar Corp., v. United States*,
687 F. Supp. 3d 1308 (Ct. Int'l Trade 2024) ........ 15

*Phoenix Metal Co. v. United States*,
2024 WL 2891503 (Ct. Int'l Trade June 10, 2024) ........ 18

*PPG Industries, Inc. v. United States*,
525 F. Supp. 883 (Ct. Int'l Trade 1981) ........ 24

*Reno v. Catholic Soc. Servs., Inc.*,
509 U.S. 43 (1993) ........ 25

*Rimco Inc., v. United States*,
98 F.4th 1046 (Fed. Cir. 2024) ........ 18, 21, 23, 24

*Shinnecock Indian Nation v. United States*,
782 F.3d 1345 (Fed. Cir. 2015) ........ 26

*Smith Corona Corp. v. United States*,
718 F. Supp. 63 (Ct. Int'l Trade 1989) ........ 24

*Sunpreme Inc. v. United States*,
892 F.3d 1186 (Fed. Cir. 2018) ........ 16, 18, 20

*Superior Commercial Solutions LLC v. United States,*
811 F. Supp 3d 1363 (Ct. Int'l Trade 2025) ........ 18

*Tenaris Bay City, Inc.* v. U.S.,
745 F. Supp. 3d 1336 (Ct. Int'l. Trade 2024) ........ 16

*TR Int'l Trading Co. v. United States*,
433 F. Supp. 3d 1329 (Ct. Int'l Trade 2020) ........ 15

*Vietnam Finewood Co. Ltd v. United States*,
466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) ........ 1, 17, 18

**Statutes**

19 U.S.C. § 1517 ........ 1, 16

19 U.S.C. § 1517(a)(5) ........ 5

19 U.S.C. § 1517(b)(1) ........ 4

19 U.S.C. § 1517(c)(1) ........ 4

19 U.S.C. § 1517(c)(2) ........ 4

19 U.S.C. § 1517(g) ........ 19

19 U.S.C. § 1517(g)(2)(A) ........ 17

28 U.S.C. § 1581(c) ........ 1, 2, 19, 26

28 U.S.C. § 1581(i) ........ 1

28 U.S.C. § 1581(i)(1)(D) ........ 16

28 U.S.C. § 2637(d). ........ 15

The Trade Facilitation and Trade Enforcement Act The Trade Facilitation and Trade
Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016) ........ 3

**Regulations**

19 C.F.R. § 165.21 ........ 4

19 C.F.R. § 165.22 ........ 4

19 C.F.R. § 165.23 .................................................................................................... 4

**Other Authorities**

*Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759 (Dep't of Commerce Aug. 12, 2025) ................................................ 9,10

H.R. Rep. No. 114-114 (2015)................................................................................ 3

S. Rep. No. 114-45 (2015)..................................................................................... 3

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE JANE A. RESTANI, JUDGE
HONORABLE LEO M. GORDON, JUDGE
HONORABLE TIMOTHY C. STANCEU, JUDGE

NIVEL PARTS AND MANUFACTURING CO. LLC,

Plaintiff,

v.

UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,

Defendants.

PUBLIC VERSION

No. 26-04642

**DEFENDANTS' MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) of the United States Court of International Trade, defendants, the United States, *et al.*, respectfully request that the Court dismiss the claims of the plaintiff, Nivel Parts and Manufacturing Co. (Nivel or plaintiff), for lack of subject-matter jurisdiction.

**INTRODUCTION**

This case arises from an ongoing investigation of evasion of antidumping duty (AD) and countervailing duty (CVD) orders covering certain low-speed personal transportation vehicles from the People's Republic of China ("the LSPTV Orders") under the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517. The statute requires U.S. Customs and Border Protection (CBP or Customs) to implement certain "interim measures" to protect the revenue of the United States during the course of the investigation. These interim measures though are not automatic. Some are required by statute and others are discretionary, and they are only imposed if CBP finds reasonable suspicion that an importer is entering subject merchandise by means of evasion. 19 U.S.C § 1517(e).

Nivel challenges the imposition of these interim measures. But instead of waiting for the EAPA investigation to conclude and raise its challenge as part of the judicial review of final determination by CBP(writ large), Nivel raises the challenge prematurely, invoking the Court's jurisdiction under 28 U.S.C. § 1581(i). Compl. ¶ 7.

Nivel cannot proceed under this jurisdictional path. When "relief is prospectively and realistically available under another subsection of 1581," a plaintiff cannot invoke jurisdiction under subsection 1581(i). *Chemsol, LLC v. United States,* 755 F.3d 1345, 1354 (Fed. Cir. 2014); *accord Vietnam Finewood Co. Ltd v. United States*, 466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020). Here, relief (*i.e.*, judicial review of its claims) is prospectively and realistically available under 28 U.S.C. 1581(c), once CBP completes the EAPA investigation.

Specifically, judicial review of final determinations rendered under 19 U.S.C. §1517(c) and (f) is provided for under the jurisdictional provision of 28 U.S.C. § 1581(c). 19 U.S.C. § 1517(g)(1). All interim decisions leading up to the final determination, including the imposition

of interim measures, are subsumed into the final determination and are subject to judicial review when the final determination is reviewed. *All One God Faith, Inc. v. United States*, 589 F. Supp. 3d 1238, 1246-47 (Ct. Int'l Trade 2022) ("determination as to evasion may encompass interim decisions subsumed into the final determination."); *see also*, *e.g.*, *Chemsol, LLC,* 755 F.3d at 1353-54 (describing the same concept as to extensions of liquidation and judicial review under 28 U.S.C. § 1581(a)). Because judicial review of plaintiff's claim is prospectively and realistically available under section 1581(c) when the Court reviews the final determination by CBP under EAPA, plaintiff cannot seek early judicial review by invoking jurisdiction under section 1581(i).

Nivel states that it cannot wait until the end of the investigation for judicial review because the imposition of the interim measures will financially bankrupt them before that moment arrives. Compl ¶¶ 11-12. But Nivel falls short in this showing.

Moreover, Congress did not intend for judicial review of the EAPA investigation to happen in a piecemeal fashion. Rather, Congress intended for the EAPA investigation to run its course. This means that all determinations anticipated by the investigation are to be rendered (including interim determinations), and for judicial review to happen at one time when the investigation is over and CBP has had an opportunity to conduct an administrative review, if one is requested, under 28 U.S.C. § 1581(c). Because judicial review is prospectively and realistically available under subsection 1581(c), plaintiff cannot seek early judicial review by invoking jurisdiction under section 1581(i).

Plaintiff invokes this Court's rulings in the *ICON* matter to support its claims. *See, e.g.* Compl ¶ 12. The Government respectfully disagrees with the section 1581(i) jurisdiction

holding by the Court in *ICON*, and asks this Court to analyze the question from a fresh perspective.

Even if the Court were able to invoke its residual jurisdiction, plaintiff's claims would still be unripe. Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. Here, the Court should avoid piecemeal judicial review to protect the integrity of the administrative process. The EAPA investigation should be allowed to run its course and for judicial review to happen in one unified fashion, under 28 U.S.C. § 1581(c).

## BACKGROUND

### A. The Enforce And Protect Act

In 2016, the President signed into law The Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016). Title IV, Section 421 of TFTEA, commonly referred to as the "Enforce and Protect Act" or "EAPA," established a new administrative procedure requiring CBP to investigate allegations of evasion of AD/CVD orders and ensure a level playing field for domestic industries. *See generally* H.R. Rep. No. 114-114 (2015); S. Rep. No. 114-45 (2015).

Under EAPA, federal agencies or interested parties — including domestic and foreign manufacturers, producers, exporters, certified unions or recognized unions or groups of workers; and trade or business associations in a particular industry—may submit allegations to CBP that merchandise covered by an AD/CVD order has entered the United States through evasion. If such allegations reasonably suggest that evasion is occurring, within 15 calendar days of receiving an allegation, CBP must initiate an investigation. 19 U.S.C. § 1517(b)(1). Within 90

calendar days, CBP must make an initial determination of whether there is reasonable suspicion of evasion and, if so, CBP must issue interim measures, which includes the suspension and extension of liquidation for certain entries, and such additional measures that the Commissioner determines necessary to protect the revenue such as posting of cash deposits and requiring single transaction bonds. 19 U.S.C. § 1517(e). The EAPA statute grants CBP authority to collect and verify any information it deems necessary to make its evasion determination. 19 U.S.C. § 1517(c)(2). CBP's regulations set forth the types, and requirements for the submission of factual information by parties. 19 C.F.R. § 165.23. For example, parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP. *Id.* Parties to the investigation have 200 days from the date on which the investigation was initiated to submit factual information on the record, and 230 calendar days to submit written arguments. *Id.* Parties to the investigation have 15 calendar days to submit responses to other parties' written arguments. *Id.* Interested parties who are not parties to the investigation may provide information only in response to requests by CBP. *Id.*

During the investigation, CBP maintains an administrative record of material obtained and considered by CBP during the investigation, as well as record information submitted by interested parties. 19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21. No later than 300 calendar days after the initiation of investigation initiation, CBP is required to make a determination as to whether the administrative record contains substantial evidence that the importer under investigation has evaded AD/CVD duties. 19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22. Evasion occurs when covered merchandise is entered into the United States by a material and false document, statement, or act, or material omission, which results in a cash deposit, security, or applicable AD or CVD amount being reduced or not applied. 19 U.S.C. § 1517(a)(5).

Interested parties are permitted to request an administrative review of the initial determination, and CBP must complete the review and issue a final administrative review determination no later than 60 business days after such a request. 19 U.S.C. § 1517(f). EAPA allows for judicial review in this Court of CBP's final determination of evasion under § 1517(c) and the administrative review decision under 1517(f) administrative review, provided that an action is commenced within "30 business days" after CBP completes the administrative review. 19 U.S.C. § 1517(g)(1). The jurisdictional provision for this Court's review of final EAPA determination is 28 U.S.C § 1581(c). *Id.*

**B. History of the AD/CVD Investigation On Certain LSPTVs From China**

On June 20, 2024, the American Personal Transportation Vehicle Manufacturers Coalition ("The Coalition" or "Defendant-Intervenor") filed petitions with the U.S. Department of Commerce ("Commerce") and the U.S. International Trade Commission ("ITC") to initiate antidumping ("AD") and countervailing duty ("CVD") investigations concerning imports of certain low speed personal transportation vehicles (LSPTV) from the People's Republic of China (China). *Certain Low-Speed Transportation Vehicles from the People's Republic of China: Initiation of Countervailing Duty Investigation*, 89 Fed. Reg. 57,865 (Dep't Com. July 16, 2024). In the petition, the Coalition stated that the Chinese industry is selling certain LSPTVs in the United States at less than fair value, hurting U.S. industry and American workers. Press Release, Wiley Rein LLP, *Wiley Files Trade Petitions on Behalf of American Manufacturers of Low-Speed Personal Transportation Vehicles to Combat Illegal and Unfair Dumping and Subsidies from China* (June 20, 2024), https://www.wiley.law/pressrelease-Wiley-Files-Trade-Petitions-on-Behalf-of-American-Manufacturers-of-Low-Speed-Personal-Transportation-Vehicles-to-Combat-Illegal-and-Unfair-Dumping-and-Subsidies-from-China.

On July 16, 2024, after examining the petition and supplemental responses, Commerce published a notice of initiation of AD/CVD investigations into certain LSPTVs from China. 89 Fed. Reg. 57,870. The scope of the investigation covered "certain [LSPTVs] and subassemblies thereof, whether finished or unfinished and whether assembled or unassembled, with or without tires, wheels, seats, steering columns and steering wheels, canopies, roofs, or batteries." *Id.* at 57,869. The full scope of the investigation is available at 89 Fed. Reg. 57,869-70.

On October 22, 2024, the Coalition filed a petition for a critical circumstances finding. Press Release, *Wiley Rein LLP, Wiley, on Behalf of the American Personal Transportation Vehicle Manufacturers Coalition, Files Critical Circumstances Allegations Against Imports of LSPTVs from China* (Oct. 23, 2024), https://www.wiley.law/pressrelease-Wiley-on-Behalf-of-the-American-Personal-Transportation-Vehicle-Manufacturers-Coalition-Files-Critical-Circumstances-Allegations-Against-Imports-of-LSPTVs-from-China. The Coalition filed this petition based on a finding that Chinese LSPTV imports surged 109% between June 2024 and August 2024 (post-investigation period), compared to March 2024 and May 2024 (pre-investigation period). *Id.* Notably, since the Coalition filed its June 2024 petition, LSPTV imports from China surged dramatically, resulting in more imports in the span of June and August 2024 than the total volume of Chinese imports from the prior year. *Id.*

On December 6, 2024 and January 30, 2025, Commerce published preliminary AD, CVD, and critical circumstances determinations. *Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Determination of Critical Circumstances, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 96,942 (Dep't Com. Dec. 6, 2024); *Certain Low Speed Personal Transportation Vehicles From*

*the People's Republic of China: Preliminary Affirmative Determination of Sale at Less-Than-Fair-Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures*, 90 Fed. Reg. 8517 (Dep't Com. Jan. 30, 2025). Commerce modified the scope of the investigation as appeared in the July 2024 Notice of Investigation to include one additional Harmonized Tariff Schedule of the United States ("HTSUS") subheading (*i.e.* 8703.10.506) but otherwise the scope remained unchanged. 89 Fed. Reg. 96,942, 96,944–45. Commerce preliminary determined that an estimated weighted average dumping margin of 478.09% existed for the "China-Wide Entity" rate. 89 Fed Reg at 8518. Commerce also preliminary determined that the estimated counteravailable subsidy rate of 22.04% existed for the "All Others" rate. 90 Fed Reg at 96943

Commerce published a decision memorandum to explain its preliminary determination and critical circumstances finding. Memorandum from Scott Fullerton to Abdelali Elouaradia re: *Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China* (January 23, 2025) available at https://access.trade.gov/frnotices ("Preliminary Determination Memorandum"). In this memo, Commerce affirmed the surge of imports post June 2024 that the Coalition provided in its October 2024 petition based on responses from mandatory respondents. Preliminary Determination Mem. at 33-36; *see also* Press Release, *Commerce Department Preliminarily Finds Chinese Low-Speed Personal Transportation Vehicles Unfairly Subsidized, Wiley Rein LLP Reports* (Nov. 26, 2024) available at https://www.wiley.law/pressrelease-Commerce-Department-Preliminarily-Finds-Chinese-Low-Speed-Personal-Transportation-Vehicles-Unfairly-Subsidized-Wiley-Rein-LLP-Reports.

On June 16, 2025, Commerce issued a final scope decision memorandum after receiving comments from interested parties about revising the scope of the investigation. *See* Memorandum from Jerry Xiao and Gordon Struck to Scot Fullerton re: *Less-Than-Fair- Value and Countervailing Duty Investigations of Certain Low Speed Personal Transportation Vehicles from the People 's Republic of China: Final Scope Decision Memorandum* (June 16, 2025) ("Final Scope Decision Memorandum"), available at https://access.trade.gov/frnotices, (attached for the Court's convenience as Govt. Exh. 1). This Final Scope Decision Memorandum was issued after receiving briefs from LSPTV industry participants, including Nivel, and an April 11, 2025 public hearing concerning the scope of these investigations. *Id* at 1-3. This memorandum addressed several comments from petitioners regarding the scope of the proposed LSPTV Order. *Id*. Relevant here, Commerce addressed comments concerning: (1) the adoption of a certification requirement and (2) proposed definitions for unfinished merchandise and subassemblies. *Id*. at 2.

First, regarding the certification requirement, Commerce specifically addressed whether the agency "Should Adopt a Certification Requirement and Amend the Scope so that LSPTV Components are not Unduly Excluded." *Id*. at. 3. The Coalition was in favor of adding a certification regime while industry participants like Nivel opposed it. *Id*. at 3-4. While Commerce "does not typically adopt a certification regime" it elected to do so here. *Id*. at 4. Commerce explained that it was necessary here because "petitioner sought to separate components imported to assemble LSPTVs from components imported for other purposes, such as for spare parts or the secondary/retail market." *Id*. at 5. Furthermore, Commerce stated that the "language in the petition reflects the concern that LSPTVs will be broken down in China into parts and components, shipped to the United States through different importers, ports, etc., and

then reassembled to produce LSPTVs." *Id*. at 5. Commerce clarified that the certifications would not "be required for all parts and components (i.e., not nuts and bolts) but for the following Chinese-origin parts and components suitable for use in LSPTVs: seat assemblies, steering columns, suspension systems, plastic cowlings, and electric and gas-powered motors." *Id*. at 6. Commerce attached the full certification requirement in appendix II of its Final Scope Decision Memorandum. *Id*. at 17-19

Second, regarding the definitions, Commerce addressed whether to "Adopt STAR EV's Proposed Definitions Pertaining to Unfinished Merchandise and Subassemblies." *Id*. at. 10 STAR EV's proposed definitions sought to narrow the scope and opposed the modifiers in the scope, like "typically," "but not limited to," and "or ready for installation." *Id*. at 11. Commerce rejected STAR EV's proposal, stating "[r]egarding STAR EV's argument concerning subassemblies, we determine that the complete elimination of references to subassemblies/rolling chassis from the scope would allow circumvention through the importation of incomplete LSPTVs." *Id*. Commerce agreed with petitioner that a "bright-line definition would be too easily circumvented." *Id*. at 12. Commerce found that the definition of a subassembly/chassis "is detailed enough to allow administration of potential orders while also broad enough to mitigate risk of circumvention." *Id*.

Finally, on August 12, 2025, Commerce published its final antidumping and countervailing duty determination and orders. *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759 (Dep't Commerce. Aug. 12, 2025) (the "LSPTV Orders"). Like the June 2024 notice of investigation, the merchandise

covered by the LSPTV Orders are certain LSPTVs "subassemblies thereof, whether finished or unfinished and whether assembled or unassembled, with or without tires, wheels, seats, steering columns and steering wheels, canopies, roofs, or batteries." The full scope of these orders can be found at 90 Fed. Reg. 38,763 (Dep't of Commerce Aug. 12, 2025). The weighted dumping margin rate of 478.09% for the "China-Wide Entity" rate remained the same. *Id*. at 38,761. However, the estimated CVD subsidy rate for the "All Others" rate was increased to 41.14%. *Id*. at 38,762.

**C. CBP's Commencement of an EAPA Investigation**

On May 19, 2026, the Coalition filed an EAPA allegation with CBP claiming that Nivel is evading the LSPTV Orders. September 23, 2026 Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 8283 ( "The Notice"; "Public Notice" attached as Govt. Exh. 2; "Confidential Notice" attached as Govt. Exh. 3;). The Coalition's allegation was supported by "a market researcher's investigative report, commercial trade data, official U.S. import statistics, industry declarations, and other open-source information." Public Notice, Govt. Exh. 2 at 3. On June 17, 2026, CBP's Trade Remedy Law Enforcement Directorate (TRLED) acknowledged receipt of the allegation. *Id*.; 19 C.F.R. § 165.12(a).

On September 16, 2026, CBP notified Nivel that it determined there was reasonable suspicion Nivel was evading the LSPTV Orders. Compl ¶ 30. CBP informed Nivel that it was implementing the following interim measures pursuant to 19 U.S.C. § 1517(e)(1)-(3):

> 1. Extend liquidation of unliquidated entries that entered before the date of initiation of the investigation (June 18, 2026);
> 2. Suspend liquidation of unliquidated entries entered on or after the date of initiation of the investigation, June 18, 2026, and reject any entry summaries and require a re-file for those entries that are within the entry summary reject period;
> 3. Require "live" entry for all imports of LSPTVs from China, requiring the Importers to submit proper documentation and all duties prior to release of the merchandise;

*Id* at ¶ 31. CBP followed up with its full notice of initiation of investigation and interim measures on September 23, 2026. Public Notice, Govt. Exh. 2.

In the September 23, 2026 Notice, CBP summarized the information provided by the allegation. Public Notice, Govt. Exh. 2 at 7-10. First, the allegation details three different schemes: (1) transshipment of disassembled LSPTVs from China through Vietnam, (2) misclassification, (3) and undervaluation. *Id.* at 7-10.

First, regarding the transshipment scheme, the allegation detailed a "significant shift in Nivel's import activity after the cash deposit requirements were imposed in September 2024." *Id.* at 7. Prior to this, Nivel "imported fully assembled LSPTVs from China" and then since September 2024, it shifted to importing "parts and accessories for motor vehicles." *Id.* The allegation also asserts that Shenzhen Aoxiang, Nivel's top supplier, is "one of the biggest suppliers of Chinese LSPTVs to the market" and that its LSPTVs "can be broken down into smaller component parts and reassembled." *Id.* at 8. The allegation "emphasizes that Nivel simply purchases slightly disassembled LSPTVs from their biggest supplier Shenzhen Aoxiang and performs final assembly in the United States to avoid payment of applicable AD/CVD duties." *Id.*

The allegation regarding the transshipment scheme was supported by [[[redacted]]] Confidential Notice, Govt. Exh. 3 at 8. [[[redacted]]] *Id.* Furthermore, the allegation stated that "Chinese producers often require importers to purchase the rolling chassis before allowing them to purchase parts used in final assembly." Public Notice, Govt. Exh. 2 at 8. The allegation provided a declaration to support this finding of transshipment, noting that

"Nivel's business activity during the relevant period was inconsistent with apparent decrease in the company's direct imports from China." *Id.*

Second, regarding misclassification, the allegation states that "Nivel has also misclassified LSPTVs and related parts under incorrect HTSUS codes, such as those meant for golf balls and equipment." *Id.* at 9. The Coalition provided "bill of lading data which shows that Nivel began importing goods under HTSUS code 9506.32 (golf balls) in 2024." *Id.* Prior to 2024, Nivel "only imported a small amount of goods under this HTSUS code." *Id.* Starting in 2025, Nivel "started importing from their Chinese suppliers more than twenty-eight TEUs of goods labeled 'golf equipment'" *Id.* This volume and change in HTSUS classification supports misclassification because "neither Nivel nor its affiliates appear to sell golf balls or related equipment." *Id.*

Third, regarding the undervaluation scheme, the allegation contends "Nivel, in coordination with Shenzhen Aoxiang and any other Chinese suppliers, has manipulated commercial invoice prices to undervalue entries and reduce the amount of duties owed." *Id.* at 9. "For example, Shenzhen Aoxiang's advertised price of as low as $50 per completed LSPTV is highly implausible, particularly when compared to internal Coalition data, which estimates the cost of a rolling chassis alone to be between $2,200 and $3,700." *Id.* The allegation states that "it is economically unfeasible for Chinese manufactures to produce and sell completed vehicles at such a low price point." *Id.* Furthermore, Nivel's retail prices are "comparable to or lower than the actual cost of importation" indicating that Nivel is not paying the AD/CVD duties on these imports. *Id.* at 10.

After detailing the allegation, the Notice then explains that "CBP's reasonable suspicion determination is based on the ***totality of the evidence***." *Id.* at 12. (emphasis added). This

includes "the Importers' prior entries of covered merchandise as Type 01 (i.e., standard consumption entries not subject to AD/CVD duties), the import-pattern shifts identified in the Allegations and confirmed by CBP's review of official entry data, and unresolved origin and sourcing issues in the CF-28 responses." *Id.*

First, CBP summarized its findings based on its internal review of Nivel's entries and import data. Before the LSPTV Orders, Nivel "mainly sourced LSPTVs from Chinese Suppliers including [[[redacted]]] Confidential Notice, Govt. Exh. 3 at 15. After the LSPTV Orders, Nivel began to diversify its "across multiple countries, with a notable increase in LSPTVs sourced from Vietnam." Public Notice, Govt. Exh. 2 at 15. Despite this purported diversification, "Nivel's CF-28 responses continue to show Chinese-origin inputs and unresolved questions regarding the source of raw materials used in the claimed Vietnamese production." *Id.*

Next, CBP data revealed a suspicious intertwining between Nivel's main Vietnamese supplier [[[redacted]]] and its related Chinese manufacturer [[[redacted]]]. Confidential Notice, Govt. Exh. 3 at 15. CBP data shows that [[[redacted]]] *Id.* CBP trade system data also shows that [["[redacted]]] during the [period of investigation]." *Id.* Specifically, [[[redacted].]] *Id.* CBP also explained that there is reasonable suspicion that [[[redacted]]] *Id.* Outside of CBP data, US Patent and Trademark Office registration data shows that [[[redacted]]] *Id.*

CBP also explained that Nivel's CF-28 responses supported the information provided in the allegation. *Id.* at 16. In these responses, Nivel declared its entries as "Vietnamese origin merchandise" manufactured by [[[redacted]]]. *Id.* Specifically, Nivel claimed that [[[redacted]]] *Id.* Nivel provided Bills of Material, production records, inspection reports, and input documentation to support these claims. *Id.* Yet, Nivel provided that [[[redacted]]] "was unable to provide the country of origin" for the materials in the [["[redacted]"]] *Id.* In sum, CBP found that this "incomplete tracing leaves unresolved questions concerning whether Chinese-origin materials, components, or chassis-related subassemblies may have been incorporated into merchandise declared as Vietnamese-origin." Public Notice, Govt. Exh. 2 at 16.

In addition to the incomplete source tracing, Nivel's CF-28 responses revealed an unusual invoicing arrangement between [[[redacted]]] Confidential Notice, Govt. Exh. 3 at 16. Specifically, [[[redacted]]] "invoiced Nivel for complete finished goods, including electric golf carts and spare parts." *Id.* Nivel explained that [[[redacted]]] are "affiliated sister companies." *Id.* Furthermore, Nivel provided that [[[redacted]]] *Id.* However, Nivel provided no supporting documentation "to substantiate the alleged credit line limitation." *Id.*

Finally, CBP highlighted issues with the bills of materials provided in Nivel's CF-28 responses. In the bills of material, [[[redacted]]] claimed the [[[redacted]]] and "rear-drive axle assembly as manufactured in-house in Vietnam." *Id.* at 17. Yet, other items were only "procured in Vietnam." Public Notice, Govt. Exh. 2 at 17. Nivel also explained that its

Vietnamese manufacturer "was unable to confirm the origin of those items." *Id*. Therefore, CBP "determined that the country of origin of certain goods listed in the documents submitted with the CF-28 responses was unknown rather than Vietnam." *Id*.

To summarize, CBP's finding of reasonable suspicion was supported by (1) the allegation and its supporting data and declarations, (2) CBP internal entry and trade data, (3) USPTO data, and (4) CF-28 responses provided by Nivel.

## ARGUMENT

### I. Legal Standards

The Court of International Trade, "like all federal courts, is a court[] of limited jurisdiction." *TR Int'l Trading Co. v. United States*, 433 F. Supp. 3d 1329, 1337 (Ct. Int'l Trade 2020) *aff'd*, 4 F.4th 1363 (Fed. Cir. 2021). The Court's jurisdiction is governed by 28 U.S.C § 1581. A party is not entitled to judicial relief "until the prescribed administrative remedy has been exhausted." *McKart v. U.S.*, 395 U.S. 185, 193 (1969). In addition to the exhaustion requirements generally applicable to review of federal agency action, the CIT has its own "unique exhaustion statute," *Ninestar Corp., v. United States*, 687 F. Supp. 3d 1308, 1324 (Ct. Int'l Trade 2024); *see* 28 U.S.C. § 2637(d). This exhaustion statute "is not a mere hollow codification of prudential exhaustion," but rather "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Ninestar Corp.*, 687 F. Supp. 3d at 1324 (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)). The requirement of exhaustion of administrative remedies "acknowledges agency expertise, allows agencies to correct mistakes, and promotes efficiency." *Tenaris Bay City, Inc.* v. U.S., 745 F. Supp. 3d 1336, 1343 (Ct. Int'l. Trade 2024), *aff'd*, 191 F.4th 1370 (Fed. Cir. 2026).

Section 1581(c) provides the pathway for judicial review of CBP's final determinations in EAPA investigations. It states that this Court "shall have exclusive jurisdiction of any civil action commenced under" 19 U.S.C. § 1517. 28 U.S.C. § 1581(c). 19 U.S.C. § 1517(g) provides for "judicial review" of "a determination under subsection (c) with respect to whether covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(g)(1).

Section 1581(i) also provides a source of residual jurisdiction for this Court to entertain "any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . administration and enforcement" of the trade laws. 28 U.S.C. § 1581(i)(1)(D). Although described as a "catchall provision, its scope is strictly limited." *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1377 (Fed. Cir. 2022). Section 1581(i) may not be invoked when "jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate." *Id.* (emphasis added); *see also Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (citing *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002)). The burden of establishing that such remedy would be manifestly inadequate is on the party asserting § 1581(i) jurisdiction. *Sunpreme Inc.*, 892 F.3d at 1191.

The purpose of the strict limitation on section 1581(i) jurisdiction is to "preserve[] the congressionally mandated procedures and safeguards provided in the other subsections, absent which litigants could ignore the precepts of subsections (a)–(h) and immediately file suit in the Court of International Trade under subsection (i)." *ARP Materials, Inc.,* 47 F.4th at 1377.

## II. The Court Should Dismiss This Case for Lack of Subject-Matter Jurisdiction Because Jurisdiction Under Section 1581(c) Will Be Available And Is Not Manifestly Inadequate

### A. EAPA Expressly Provides For Judicial Review Pursuant To Subsection 1581(c)

EAPA specifically provides that this Court has subject-matter jurisdiction pursuant to section 1581(c) over "any civil action commenced under . . . section 517 of the Tariff Act of 1930 [codified at 19 U.S.C. § 1517]." Section 1517, in turn, provides for judicial review of a determination of "whether covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(g)(1). A section 1581(c) challenge may include whether CBP "fully complied with all procedures under subsections (c) and (f)" and whether CBP's "determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. §§ 1517(g)(2)(A) and (B).

Here, plaintiff invokes subsection 1581(i) jurisdiction to challenge the imposition of interim measures in an EAPA investigation. Compl. ¶ 7. The Federal Circuit and this Court have previously rejected similar actions finding that when "relief is prospectively and realistically available under another subsection of 1581," a plaintiff cannot invoke jurisdiction under subsection 1581(i). *Chemsol,* 755 F.3d at 1354. The Court's review of CBP's "determination as to evasion may encompass interim decisions subsumed into the final determination." *All One God Faith, Inc.*, 589 F. Supp. 3d at 1246-47 (citing *Diamond Tools Technology LLC v. United States*, 545 F. Supp 1324, 1341 (Ct. Int'l Trade 2021)).

Plaintiff is not the first party to prematurely challenge the imposition of interim measures. For example, in *Vietnam Finewood*, the importer, challenged CBP's interim measures before CBP had issued a final determination. *Vietnam Finewood Co,* 466 F. Supp. 3d at 1282. Like here, Vietnam Finewood claimed jurisdiction under §1581(i). *Id.* at 1277. The Court dismissed Vietnam Finewood's actions as premature, noting that a party "may not expand a court's jurisdiction by creative pleading." *Id.* at 1282 (quoting *Sunpreme Inc.*, 892 F.3d at 1193). The Court held that that the importer "will be able to avail themselves of jurisdiction pursuant to 28

U.S.C. § 1581(c) in order to challenge Customs' final determination and administrative appeal, as well as any procedural decisions merged into the same, and the remedy provided under that subsection is not manifestly inadequate." *Id.* at 1284.

Until *Superior Commercial Solutions LLC v. United States,* 811 F. Supp 3d 1363 (Ct. Int'l Trade 2025) (appeal pending Court No. 26-1373 (Fed. Cir. 2026) and *ICON EV LLC v. United States,* 840 F.Supp. 3d 600 (Ct. Int'l Trade 2026), this Court had uniformly rejected importers' challenges to the imposition of interim measures. *See Phoenix Metal Co. v. United States*, 2024 WL 2891503, at *8 (Ct. Int'l Trade June 10, 2024), *appeal dismissed*, No. 2024-2222, 2024 WL 4534014 (Fed. Cir. Oct. 21, 2024); *Am. Pac. Plywood, Inc. & LB Wood Cambodia Co., Ltd.*, No. 20-03914, 2023 WL 4288346, at *7-8 (Ct. Int'l Trade June 22, 2023); *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1273 (Ct. Int'l Trade 2022); *Diamond Tools*, 545 F. Supp. 3d at 1341-42. For the reasons discussed below, we respectfully disagree with the section 1581(i) jurisdiction holding by the Court in *ICON EV*, and ask this Court to analyze the question from a fresh perspective.

The Court reviews the facts asserted in the pleadings and determines the "true nature of the action" when assessing jurisdiction. *Rimco Inc., v. United States*, 98 F.4th 1046, 1052 (Fed. Cir. 2024). Here, plaintiff seeks review of CBP's imposition of interim measures in connection with an investigation into whether importers evaded the LSPTV Orders. *See* Compl. ¶¶ 22-34 As explained, EAPA specifically provides that this Court has subject-matter jurisdiction pursuant to section 1581(c) over "any civil action commenced under . . . section 517 of the Tariff Act of 1930 [codified at 19 U.S.C. § 1517]," which includes challenges to the imposition of interim measures or initiation of investigations. *See, e.g., Leco Supply, Inc. v. United States*, 619 F.

Supp. 3d 1287, 1292 (Ct. Int'l Trade 2023) (importer challenge under section 1581(c) to CBP's evasion determination on basis that CBP improperly initiated the EAPA investigation).

The statutory scheme, 19 U.S.C. § 1517(g) and 28 U.S.C. § 1581(c) together, contemplate that all interim decisions leading up to the final determination, including the imposition of interim measures, are subsumed into the final determination and are subject to judicial review when the final determination is reviewed. *All One God Faith, Inc.*, 589 F. Supp. at 1246-47 (Ct. Int'l Trade 2022) ("determination as to evasion may encompass interim decisions subsumed into the final determination."); *see also*, *e.g.*, *Chemsol, LLC,* 755 F.3d at 1353-54 (describing the same concept as to extensions of liquidation and judicial review under 28 U.S.C. § 1581(a)). Thus, because judicial review of plaintiff's claim is available under section 1581(c) when the Court reviews the final determination of the EAPA investigation, 1581(i) jurisdiction is not available now.

In short, Nivel must wait for Customs to complete its EAPA investigation and issue a final determination. Plaintiff can then challenge that final determination, and any interim agency decisions that will be subsumed in the final determination, in an action under section 1581(c).

**B. The Remedy Available Under Section 1581(c) Is Not Manifestly Inadequate**

Defendants acknowledge that the Court has previously indicated that there may be scenarios where a plaintiff may allege specific enough harm such that jurisdiction under § 1581(i) might be warranted. *Hysla v. United States*, 1998 WL 51731 (Ct. Int'l Trade Feb. 3, 1998); *Phoenix Metal Co.*, 2024 WL 2891503 at *9. But the Federal Circuit has held that "mere allegations of financial harm do not render a remedy established by Congress manifestly inadequate." *Sunpreme Inc.,* 892 F.3d at 1193 (Fed. Cir. 2018) (citing *Int'l Custom Prods., Inc v. United States*, 467 F.3d 1324, 327 (Fed. Cir. 2006)). Nor can ordinary delay serve as the basis for manifest inadequacy; "delays inherent in the statutory process do not render it manifestly

inadequate." *Id.* (quoting *Int'l Custom Prods.*, 467 F.3d at 1327). Rather, the predicate steps "must be an 'exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Id.* at 1193-94 (quoting *Hartford Fire Ins. Co.v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008)); *Nat'l Nail Corp. v. United States*, 335 F. Supp. 3d 1321, 1327 (Ct. Int'l Trade 2018) (same).

The Federal Circuit's decision in *International Custom Products* is instructive. In that case, an importer sought to invoke jurisdiction under section 1581(i), alleging that it would face "many forms of financial hardship… including an imminent threat of bankruptcy." if it had to resort to the remedy available under 28 U.S.C. § 1581(a). *Int'l Custom Prods.*, 467 F.3d at 1327. The Federal Circuit rejected the argument that these hardships or the financial distress inherent in awaiting adjudication rendered the available remedy manifestly inadequate. *Id.* at 1327-28 (noting that the Court had rejected similar claims in *American Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1549 (Fed. Cir. 1983)). The Court additionally held that "assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." *Id.* at 1327 (citing *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987); *Am. Air Parcel*, 718 F.2d at 1550-51; *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1557 (Fed. Cir. 1988)); *see also CP Kelco (Shandong) Biological Co. v. United States*, 145 F. Supp. 3d 1366, 1376 (Ct. Int'l Trade 2016) (same). The Court further cautioned that "[t]o allow a party to elect to proceed under section 1581(i), without having first availed himself of the remedy provided by section 1581(c), would undermine the integrity of the clear path Congress intended a claimant to follow." *Int'l Custom Prods.*, 467 F.3d at 1328 (citation omitted); *Nat'l Corn Growers*, 840 F.2d at 1557 ("Because appellees circumvent the proper

procedures of section 1516, fairness dictates that only the most extraordinary of circumstances would permit the invocation of jurisdiction under section 1581(i).”).

Plaintiff claims that jurisdiction under § 1581(c) is manifestly inadequate because of the economic harm it faces from complying with the law. Compl. ¶¶ 10-11. However, the statutory scheme and Federal Circuit precedent preclude plaintiff from bringing challenges to an ongoing investigation. “That importers here could fashion a more desirable remedy does not make the remedy fashioned by Congress . . . inadequate.” *Am. Air Parcel*, 718 F.2d at 1551; *see CP Kelco*, 145 F. Supp. 3d at 1377 (“Congress has not envisioned an administrative process where the Court is to co-administer the statute with Commerce with each decision that it makes”); *Erwin Hymer Grp. N. Am., Inc., v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019) (overly broad interpretation of § 1581(i) would “threaten to swallow specific grants of jurisdiction contained within other subsections.”).

Various attempts by plaintiffs in other cases to satisfy the “manifestly inadequate” remedy standard have failed. A remedy is not inadequate merely because a party believes such remedy is unavailable. *Rimco Inc.*, 98 F.4th at 1054 (citing *Hartford Fire Ins. Co,* 544 F.3d at 1294). Alleged financial hardship does not warrant dispensing with the administrative proceedings before a case may be heard. *Jiangsu Tiangong Tools Co. Ltd. v. United States*, 190 F. Supp. 3d 1218 (Ct. Int’l Trade 2016) (citing *Miller & Co*, 824 F.2d 964; *Int'l Customs Prods.,* 467 F.3d at 1327. The same is true of delays attributable to administrative proceedings. *Int'l Customs Prods., Inc.,* 467 F.3d 1324. If plaintiff “will have a meaningful opportunity after the final determination to challenge Commerce's decision ..., then the court must stay its hand at [the preliminary] stage of the proceedings.” *MacMillan Bloedel Ltd. v. United States*, 1992 WL 107336 at *1 (Ct. Int’l Trade May 8, 1992).

Plaintiff urges the Court to entertain jurisdiction under subsection 1581(i) in similar fashion to the Court in *ICON,* and find that jurisdiction under subsection 1581(i) is manifestly inadequate. Compl. ¶¶ 11-12. The Court's analysis of "manifest inadequacy" in the *ICON* decision was tied to the financial difficulties of ICON and its conclusion that the EAPA statutory framework for judicial review "essentially precludes ICON from vindicating a constitutional right." *Id.* at 608. The Court in *ICON* held as follows:

> The court has (i) jurisdiction over ICON's claims relating to interim measures because a remedy under (c) jurisdiction would be manifestly inadequate.[] The EAPA requires Customs to impose interim measures no later than 210 days before it issues its final determination. *See* 19 U.S.C. § 1517(c)(1)(A), (e). The EAPA provides for administrative and judicial review only of final determinations, however. *Id.* § 1517(f), (g); *Vietnam Finewood Co. v. United States*, 466 F. Supp. 3d 1273, 1284 (CIT 2020) (holding that the court's review of Customs' final determination may encompass interim decisions subsumed into the final determination). Thus, absent extraordinary relief, the EAPA insulates a Customs' decision to impose interim measures from the court's review for 210 days plus the sixty business days in which Customs must complete its administrative review. *See* 19 U.S.C. § 1517(f).
>
> While the government is correct that "delays inherent in the statutory process" are normally not manifestly inadequate, Gov. Mot. at 12 (citing *Sunpreme*, 892 F.3d at 1194 (citation omitted)), here this statutory scheme essentially precludes ICON from vindicating a constitutional right. According to ICON, Customs imposed interim measures without due process that will bankrupt it before it can even receive a final determination from Customs or appeal that determination if it is adverse. *See* Compl. ¶¶ 15–16, 34. Apart from the avenue to relief provided by 28 U.S.C. § 1581(i) jurisdiction, ICON has no statutory mechanism to challenge Customs' imposition of full interim measures with no notice.[] Requiring ICON to wait to file an action pursuant to Section 1581(c), therefore, would be "an exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain." *Sunpreme*, 892 F.3d at 1193–94 (citation modified) (citation omitted). ICON should not be driven to extinction while waiting for a final determination or an appeal of the same when an alleged constitutional deprivation—not the final determination—has

> caused its existential injury.[] Thus the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i).

*ICON EV LLC*, 840 F. Supp. 3d at 608 (Ct. Int'l Trade 2026) (internal footnotes omitted).

We respectfully disagree with this holding for several reasons. First, as we will explain in our opposition to Plaintiff's rule 56.1 motion, no such constitutional right exists. In short, an importer has no "legitimate claim of entitlement" to the right to engage in international trade, to import merchandise under a specific tariff classification or rate of duty, or to rely on the maintenance of a particular duty rate. *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (quoting. *Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999)). The *ICON* Court, in a decision granting ICON a preliminary injunction, also acknowledged that "a party has no legitimate property interest in future imports." *ICON EV LLC. V. United States*, 836 F.Supp. 3d 1361, 1370 n 16 (Ct. Int'l Trade 2026). Therefore, there has been no constitutional deprivation here.

Second, we respectfully submit that *ICON* erroneously departed from the proper analysis of manifest inadequacy. "Manifest inadequacy" is more appropriately viewed as a legal sufficiency test – *i.e.*, whether jurisdiction under section 1581(a)-(h) provides a sufficient means for having the claims reviewed, and if meritorious, for the Court to award relief to plaintiff, as a legal matter. The Court should avoid viewing it as a party-specific test, tied to the financial viability of a particular plaintiff. If a party-specific test were the correct one, a litigant could easily circumvent the required jurisdictional path through an artful complaint, as opposed to the nature of the claim dictating jurisdiction. *See*, *i.e.*, *Rimco Inc.*, 98 F.4th at 1052 (Fed. Cir. 2024) (the Court reviews the facts asserted in the pleadings and determines the "true nature of the action" when assessing jurisdiction.). As we stated above, the purpose of the strict limitation on section 1581(i) jurisdiction is to "preserve[] the congressionally mandated procedures and

safeguards provided in the other subsections, absent which litigants could ignore the precepts of subsections (a)–(h) and immediately file suit in the Court of International Trade under subsection (i)." *ARP Materials, Inc.*, 47 F.4th at 1377.

Parties' arguments based on "manifest inadequacy" have repeatedly been rejected by this Court and the Federal Circuit where a viable alternative for relief existed within the other subsections of section 1581. *Jiangsu Tiangong Tools Co. Ltd.*, 190 F. Supp. 3d at 1222 ("even if the court were to accept Plaintiff's allegations of financial harm as true [e.g., that Commerce's rejection of Plaintiff's Q&V questionnaire response and subsequent submissions will result in an affirmative preliminary determination and the assessment of a PRC-wide duty rate would ultimately cause Plaintiff to lose its entire U.S. market], Plaintiff's argument does not establish jurisdiction in this case"); *Rimco, Inc.*, 98 F.4th at 1054 (finding no "manifest inadequacy" where plaintiff had claimed that administrative review was inappropriate because importers could not effectively raise constitutional claims); *see also Government of People's Republic of China v. U.S.*, 483 F. Supp. 2d 1274, 1281-82 (Ct. Int'l Trade 2007) (concluding that delay of review until end of Commerce's countervailing duty investigation was not significant enough to make jurisdiction under section 1581(c) manifestly inadequate; plaintiffs' cost of defending in trade remedy proceeding was deemed inherent in review process, and business risk on future imports was deemed ordinary effect of trade remedy regime); *MacMillan Bloedel Ltd.,* 1992 WL 107336 at *1; *Smith Corona Corp. v. United States*, 718 F. Supp. 63, 66-67 (Ct. Int'l Trade 1989) (no § 1581(i) jurisdiction to review agency decision refusing to suspend liquidation of entries); *Koyo Seiko Co. v. United States*, 715 F. Supp. 1097, 1100 (Ct. Int'l Trade 1989) (no § 1581(i) jurisdiction to review agency decision denying additional period for comment); *PPG Industries, Inc. v. United States*, 525 F. Supp. 883, 885 (Ct. Int'l Trade 1981) (no § 1581(i) jurisdiction to

review agency's refusal to hold disclosure conference).

Third, even if the Court were to adopt the holding of *ICON* for this proceeding, Nivel would have to show that waiting for judicial review under subsection 1581(c), will "bankrupt [Nivel] before it can even receive a final determination from Customs or appeal that determination if it is adverse." *ICON EV LLC,* 840 F.Supp. 3d at 608. Nivel falls short in this showing.

Accordingly, Nivel cannot proceed under 28 U.S.C. § 1581(i) because jurisdiction under subsection 1581(c) is not manifestly inadequate. Therefore, this Court lacks subject-matter jurisdiction to entertain plaintiff's claims and the complaint should be dismissed.

### III. Even Assuming That It Were Possible For The Court To Invoke Its Residual Jurisdiction, Plaintiff's Case Is Not Ripe For Review

Even assuming that the Court was able to invoke its residual jurisdiction in this case, plaintiff's claims would still be unripe. Federal courts also are "without jurisdiction to consider… claims that are not ripe." *Martin v. United States*, 894 F.3d 1356, 1360 (Fed. Cir. 2018). The ripeness doctrine "has both constitutional and prudential dimensions." *Fisher v. United States*, 402 F.3d 1167, 1176 (Fed. Cir. 2005); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993) ("We have noted that ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."). The ripeness doctrine prevents the courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). There is a two-factor test for determining if a case is ripe: (1) "the fitness of the issues for judicial decision[;] and" (2) "the hardship to the parties of

withholding court consideration." *Id.* at 149; *accord Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1348 (Fed. Cir. 2015).

Ripeness "is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. U.S. Dep't of Interior*, 538 U.S. 803, 807-08, (2003) (quoting *Abbott Labs*, 387 U.S. at 148-49). The ripeness inquiry evaluates "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality*, 538 U.S. at 807 (citing *Abbott Labs*., 387 U.S. at 148).

As the moniker suggests, "interim measures are temporary." *Diamond Tools Technology LLC,* 545 F. Supp at 1341. In the case before the Court, CBP has yet to complete its EAPA investigation. As explained above, after CBP issues its final determination, to the extent the agency finds that plaintiff has evaded the AD/CVD duties, plaintiff will be able to assert its claims in this Court by commencing an action using the prescribed jurisdictional pathway under 28 U.S.C. § 1581(c). The plain language of section 1517(g), which only authorizes judicial review of final determinations of an EAPA investigation under section 1517(c), clearly manifests legislative intent that interim measures imposed at an early stage of an investigation are not fit for judicial review.

Likewise, plaintiff's claims are also speculative. CBP has not yet made its final determination in the EAPA investigation and the agency could ultimately reach a final negative determination of evasion. Under that scenario, plaintiff would not owe any AD/CVD duties and any cash deposits paid as a result of CBP's application of interim measures would be refunded

with interest. The burden of waiting until the conclusion of administrative proceedings is insufficient in kind and legal effect to allow for judicial review at this stage of the proceedings.

For this reason, the Court lacks subject-matter jurisdiction to entertain plaintiff's claims and the complaint should therefore be dismissed.

## CONCLUSION

For these reasons, defendants respectfully request that the Court grant the motion to dismiss for lack of subject matter jurisdiction.

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

By: /s/ Margaret J. Jantzen
MARGARET J. JANTZEN
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch

By: /s/ Adam A. Vischio
ADAM A. VISCHIO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278
(202) 305-5528

*Attorneys for Defendants*

OF COUNSEL

TAMARI J. LAGVILAVA
Senior Attorney
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, D.C. 20229
(202) 344-2940
tamari.j.lagvilava@cbp.dhs.gov

Dated: November 24, 2026

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing submission complies with the word-limitation set forth in the Standard Chambers Procedure 2(B)(1), and contains 9,239 words.

Dated: November 24, 2026

/s/ Adam A. Vischio
Adam A. Vischio